## Larson *et al.* v. Chicago, M. & St. P. R'y. Co.

After a railroad company had built its tracks, a townsite situated on both sides thereof was established, with streets extending across the tracks. Under the direction of the company's division superintendent a crossing was constructed at the crossing of one of the streets, and a crossing sign was there erected. Snow fences contained openings in a direct line with the street. This street was the principal street of the town, and the town was built up with reference thereto. The crossing remained in place, and was constantly used by the public for about four years. Held, that though the division superintendent had no authority to make a valid dedication, and though his unexpressed purpose in making the crossing was merely to accommodate settlers coming in on trains, there was an implied dedication of the crossing to public use, and the company could not obstruct public travel thereon.

(Opinion filed April 4, 1905.)

Appeal from circuit court, Roberts county; Hon. James H. McCoy, Judge.

Action by Fred Larson as president, and others as trustees, of the incorporated town of Summit, and the town of Summit, against the Chicago, Milwaukee & St. Paul Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

*John H. Perry,* for appellant.

There must be a plain and positive intention to dedicate to public use; that this plain and positive intention is an essential element of dedication. Miles v. City of Los Angeles, 58 Pac. 190; DeGrillman v. Frawley, 1 So. Reporter 151; San Francisco v. Grote, 52 Pacific 126; Rosell v. Andrews, 8 N. E. Reporter 513; McKay v. Hyde Park, 10 Sup. Ct. Reporter 512; City of Chicago v. Johnson, 98 Ill. 618; Frye v. Village of Highland, 85 N. W. Rep. 353; McIntyre v. Story, 80 Ill. 127; Chicago v. Stephenson, 17 N. E. Reporter 43.

A dedication is not an act of omission to assert a right, but it is the affirmative act of the donor, resulting from an active and not a passive condition of the owner's mind on the subject. A mere non-assertion of a right does not establish a dedication, unless circumstances establish the purpose or intention· to donate the use to the public.   City of Chicago v.  Borden,  60 N. E. Reporter 916; Frye v. Village of Highland, 85 N. W. 353.

There must be an  acceptance.   Mason v.  City  of  Sioux Falls, 2 S. D. 640.

Travel does not  constitute  an  acceptance.   District of Columbia v. Robinson, 180 U. S. 92; Baltimore & O. R.   R.   v. Seymour, 55 N. E. Rep. 953; Pennsylvania R. R.  v.  Platt,  24 N. E. 343; Shellhouse v. State, 11 N. E. Rep. 848; Hamilton  v. Oswego, 59 N. Y. S. 103; Dicken v. Liverpool Salt Co.,  23  S. E. 582; State v. Fisher, 23 S. E. Rep. 158; N. Y. &  H.  R.  Co. v. Fair H. R. R. Co., 40 Atlantic 607; Frye v. Village of  Highland, 84 N. W. 353.

Continued use does not constitute a legal highway.   Laws 1903, Chap. 100.

*J. J. Batterton* and *Barrington & Lane*, for respondents.

Where the railroad company recognize and  adopt  a  dedi cation of streets which cross its right of  way,  as  shown  by  a plat, and plank the crossing and maintain it for use, mere non·user by the public will not defeat the city's right to  open  and re-plank the crossing, after the company has wilfully  destroyed it.  Chicago, Rock Island Ry. v. Council Bluffs,  80  N.  W. 564.

No particular form of words is necessary to the validity of the dedication; it may be by survey and  plat alone.   Morgan v. Chicago & Alton Ry. Co., 96 U. S.  716.

Where the public assumed to appropriate land for public use, and the owner interposes no objection to its continual use for such time that the public convenience may be materially affected by the interruption of the enjoyment an intention to dedicate will be presumed. City of Cincinnati v. White, Lessee, 6 Peters 431.

A railroad company may dedicate a crossing over its right of way by acts showing an intention to dedicate. Greene v. Caanan, 29 Conn. 157; Williams v. Railroad Co., 39 Conn. 509; State v. City of Bayonne, 20 Atl. 69; N. P. Ry. Co. v. Spokane, 52 Fed. 428; N. P. Ry. Co. v. Spokane, 56 Fed. 915.

If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public or individuals can upon such conduct proceed as if in fact there had been a dedication. Schettler v. Lynch, 64 Pac. 955, 24 A. & E. E. L. 9; Brown v. Stark, 24 Pac. 162; Whittaker v. Ferguson, 51 Pac. 980; Morgan v. C. & A. Ry., 96 U.S. 716; Evans v. Blankenship, 39 Pac. 162.

FULLER, J. The dominant question presented by this appeal from a judgment in favor of the plaintiffs and an order overruling a motion for a new trial is whether there has been an implied dedication and valid acceptance of that portion of Maple street which intersects the defendant's right of way in the incorporated town of Summit, and which is now completely obstructed by a snow fence, depot, and platforms erected by the railway company in the year 1895. The material facts may be briefly stated thus: During the year 1881 appellant constructed its railroad directly westward across the Sisseton

& Wahpeton Indian Reservation, which became subject to entry and settlement under the homestead laws of the United States about the 15th day of April, 1892, and, pursuant to the federal statute relating to town sites, the judge of the county court filed a declaratory statement of his intention to claim, for the use and benefit of its inhabitants, what now constitutes the duly established town site of Summit, situated on both sides of appellant's right of way, and the same was duly surveyed, platted, and laid out into lots, blocks, streets, and alleys, all of which have since been continuously claimed, used, and occupied for town site purposes. As shown by the recorded plat of the 80-acre tract constituting the town site, with reference to which the respective owners of lots and blocks have acquired unquestionable title, the streets all extend north and south at right angles across appellant's right of way, and over the main track and two side tracks within the corporate limits. Prior to the 15th day of April, 1892, the telegraph office, station house, and platforms of the company were located on what afterward became Beach street, one block west of Maple street, and after the reservation was opened for settlement all local shipments of merchandise and emigrant movables were unloaded at that place. A witness who was a section foreman in that locality from 1882 until 1897, and is fully corroborated by the undisputed evidence, testified in part as follows: "The town of Summit was started in 1892, and the first crossing over the railroad tracks in the town was at Maple street. Travel commenced across there in the spring of 1892. We put the crossing down with planks. We laid planks next to the rail, and then filled in with dirt and cinders. Mr. Nelson, the road master, directed me to do this. I put up the crossing sign,

'Look Out for the Cars,' at about the time I put in the crossing.
Mr. Nelson directed me to put up the crossing sign. There
were three tracks there. The depot was a small building, and
it was located west of there just a block. All tracks on that
street were planked and fixed up that year. There was no
other crossing over the railroad tracks within the limits of
this town that year. Maple street is the street in which this
building is located. It was then, and is now, the principal
street of the town. Nearly all the travel out of the town in
a northerly direction went across this crossing. There were
two lines of snow fences north of where Maple street crossed
the track, with openings. I cannot tell whether the opening
was left at any one's request or direction. These openings
were in a direct line with Maple street north. This road ex-
tended directly north to the north line of the plat. The first
line of snow fence was about 100 feet from the track, and the
second line was about 150 feet, and these openings were left in
the snow fences as long as Maple street was used." The un-
controverted testimony clearly shows that, until obstructed by
the new depot in the fall of 1895, this Maple street crossing
thus established was maintained by the company, and used by
the public, as the exclusive thoroughfare for persons having
occasion to cross the right of way in coming in, going out, or
passing through the town, and practically all the business
structures within the corporate limits were erected on Maple
street with reference to such crossing. On behalf of the re-
spondents, C. H. Lien testified as follows: "I reside in Sum-
mit; have resided there a little over 10 years; came there in
1893. This crossing in dispute was open to travel then. I
don't remember whether all the tracks were planked or not.

The road I took in going out of the town to the north was over this crossing. There are 15 business houses on the west side of Maple street, and 21 on the east side, and they represent all the classes of business—stores, banks, restaurants, barber shops and saloons. On other streets on the west side there is a livery barn, lumber yard, and blacksmith shop, and on the east side there is an implement dealer and shoe shop. The population of Summit is close to 500 inhabitants.'' With full knowledge that the town, covering the entire 80 acres, was platted into lots, blocks, streets, and alleys on both sides of the railroad track, and that improvements and conveyances of property were being made with reference thereto, appellant's roadmaster and division superintendent caused Maple street to be planked and put in good condition for general travel across its right of way, and erected the sign, "Look Out for the Cars," which remained in place until removed by the company in the fall of 1895. Although this crossing was constantly used from 1892 to 1895, inclusive, and in a manner that suggested an intention to dedicate the same as a public highway, appellant's roadmaster testified that his only purpose in making such improvements was to accommodate settlers coming in on trains with emigrant movables to be taken north of the track, and to enable teamsters to deliver to the business men of the town merchandise which had been taken from the cars and placed upon the platforms one block west of Maple street.

It may be stated as a general proposition that no particular formality is essential to an implied dedication or acceptance of land for a public use. Conduct on the part of the owner that is clearly expressive of an intention to dedicate usually amounts to dedication, if acted upon by the public in a manner which

19 S. D.—19

clearly justifies the inference of an acceptance. In Mason v. City of Sioux Falls, 2 S. D. 640, 51 N. W. 770, 39 Am. St. Rep. 802, it is said that: "One of the methods of acquiring the right to the use of land for a street is that of the implied dedication of the same by the owner of the fee. In an implied common-law dedication, the use of such land by the public as a street, with the knowledge of and without objection by the owner of the fee for a number of years, is evidence of such dedication; and from such user by the public, without objection by the owner of the fee, a jury may presume an actual dedication of such street to the public use." To the same effect are the following cases: Alden Coal Co. v. Challis, (Ill.), 65 N. E. 665; The City of Hammond v. Maher, 30 Ind. App. 286, 65 N. E. 1055; Chicago, R. I. & P. Ry. v. City of Council Bluffs, (Iowa), 80 N. W. 564; Morgan v. Railroad Company, 96 U. S. 716, 24 L. Ed. 743; City of Cincinnati v. White's Lessee, 6 Pet. (U. S.) 431, 8 L. Ed. 452. Leaving a gap in the snow fence on the north side of the track at the intersection of Maple street where the crossing was built and the usual sign erected as a danger signal is inconsistent with the statement that appellant intended to accommodate none but the patrons of the railway company. The evidence in the case and the topography of the townsite make it reasonable to presume that a private crossing, instead of one for public use, would have been placed several hundred feet west of Maple street, near the depot and platforms where the passengers alighted and all local freight was unloaded.

While the division superintendent and roadmaster were without authority to make a valid dedication, their conduct, acquiesced in by the managing agents of the company for so long

a time, is sufficient, when considered with all the other facts and circumstances in the case, to evoke the doctrine of equitable estoppel. With reference to such a dedication as this, Mr. Justice SWAYNE says: "The appellee insists that the record discloses a case of estoppel in pais, and that the appellant is thereby barred from maintaining the claim which he seeks to enforce in this litigation. The principle is an important one in the administration of the law. It not unfrequently gives triumph to right and justice, where nothing · else could save them from defeat. . It proceeds upon the ground that he who has been silent as to his alleged rights when he ought in good faith to have spoken shall not be heard to speak when he ought to be silent. He is not permitted to deny a state of things which by his culpable silence or misrepresentations he had led another to believe existed, and who had acted accordingly upon that belief." Morgan v. Railroad Company, 96 U. S. 716, 24 L. Ed. 743 Their secret intention is unavailable as to the inhabitants of the town who have expended large sums of money in the honest belief that a public railway crossing existed upon Maple street, where practically all the business buildings were erected. In volume 9 of the American & English Encyclopædia of Law (2d Ed.) at page 45, it is said: "When the dedication is beneficial to the public, an acceptance will usually be implied from the slight circumstances, or from user by the public for the purposes for which dedicated. No formal action of any particular body or individuals is necessary, but the acceptance may be implied from any acts of the public, generally, showing an intent to appropriate and use the property dedicated." Concerning the force and effect to be given testimony of an unexpressed intention in such cases, we quote

from a recent Illinois decision, as follows: ''It is insisted that the testimony now of former officers of the railway companies as to what their intentions then were will not alone be sufficient to revoke or nullify the acts or conduct from which the dedication is to be presumed, and that, where such acts or conduct have been acted upon by the city and the public, the presumption will be conclusive of the intention to dedicate the land to public use. The rule doubtless is that the intent testified to, not to dedicate, will not be permitted to prevail against unequivocal acts and conduct on the part of the owner inconsistent with such intent, and upon which the public had a right to rely.'' The City of Chicago v. Chicago, R. I. & P. Ry. Co., 152 Ill. 561, 38 N. E. 768. To the same effect are Alden Coal Co. v. Challis, supra; Lamar v. Clements, 49 Tex. 354; The City of Columbus v. Dahn, 36 Ind. 330; Hulett, Adm'r, v. Hulett, 37 Vt. 581.

The undisputed evidence shows that the building of the new depot on Maple street crossing, over the timely protest of the inhabitants, has resulted in material injury to the village, and occasioned persons residing on the north side of the track considerable inconvenience in getting in and out of the town. In Whittaker v. Ferguson, (Utah), 51 Pac. 980, the rule applicable to a case like this is stated thus: ''Where the public assume to appropriate land for public use, and the owner interposes no objection, but acquiesces in its continual use by the public for such a length of time that the public convenience and accommodation might be materially affected by an interruption of the enjoyment, an intention to dedicate will be presumed.''

In view of the entire record, which contains many con-

vincing facts not mentioned in this opinion, it cannot be said that the evidence before the trial court was insufficient to justify the conclusion that Maple street is a public highway, duly laid out, dedicated, and opened to the public throughout its entire length and across appellant's right of way.

There being no reversible error, the judgment appealed from is affirmed.