# ROCHE REALTY & INVESTMENT COMPANY, Appellant, v. HIGHLANDS COMPANY, Respondent.
## (135 N. W. 684.)

1. **Highways—Statutes Construed.**

   Under Rev. Pol. Code of 1903, Sec. 1632, the first sentence in which (Rev. Pol. Code, 1877, ch. 29, Sec. 37; Comp. Laws 1887, Sec. 1227) refers to "public highways," and the re-mainder of which (being the amendment thereof under Chap. 100, Laws 1893) refers to "roads" or "ways,"—the whole section as amended is properly construed by distinguishing the "public highways" from the "roads" or "ways," by applying the former to routes of travel whose inception was justified by some claim of right, and by applying the latter to routes of travel whose inception was not so justified.

2. **Prescriptive Right—Statutory Highway.**

   So construed, the evidence fails to show a prescriptive right in the public to the strip of ground in dispute; it was un-occupied prairie; different routes were traveled at different times and seasons; the inception of travel was without claim or color of right. Nor can such travel, though continued for more than twenty years, create a presumption of establish-ment of a lawful highway by proper authority, and plaintiff's claim of a prescriptive right to travel across defendant's land is not sustained. Nor is the strip of land a public highway, assuming the first sentence of Sec. 1632 to be applicable; the evidence failing to show public user for twenty or more years before suit begun.

3. **Implied Dedication—Common Law—Statutory.**

   As regards such "roads" as that here involved, evidence of such user as is shown by this record is not alone sufficient to sustain a dedication, either under the statute or the gen-eral rule heretofore announced by this court in Mason v. Sioux Falls, 2 S. D. 640; Larson v. Railway Company, 19 S. D. 289, and Centerville v. Jenter, 25 S. D. 314. The conduct of the owner should be clearly expressive of present intention to set apart the land to public use, acted upon by the public in a manner clearly justifying inference of an acceptance. It clearly appearing that a future, not a present statutory dedi-cation was contemplated by defendant's grantor in his con-templated platting of the tract which embraced this strip and his planting of rows of trees on each side of the alleged high-way—which trees died—conduct consistent with such purpose cannot be construed as evidence of intention to dedicate in another manner.

   Whiting and Corson, J. J., dissenting.

‡ **Implied Dedication—Estoppel to Deny.**

> A statement by defendant's representative that, while de-
> fendant had seriously considered closing the road in question
> for some years and particularly the last couple of years, as
> regards the present prospects or intentions he had no idea
> that it will be closed, does not estop defendant from assert-
> ing its right to close the road as against an adjoining owner
> or the public; such statement was in effect a positive asser-
> ton of defendant's right to close the way at its election.

(Opinion filed, April 2. 1912.)

Appeal from the Circuit Court, Brown County. Hon. FRANK
McNULTY, Judge.

Action by the Roche Realty & Investment Company against
The Highlands Company, to enjoin defendant from obstructing
an alleged public highway. Trial to the Court. From a judg-
ment for defendant and from an order denying a new trial, plain-
tiff appeals. Affirmed.

*L. W. Crofoot* and *E. B. Harkin,* for appellant.

Dedication is a common law method of creating public ease-
ments. 13 Cyc. of Law & Prace., 437-8. A dedication differs
from a grant in that there need be no grantee in esse at the time
of dedication. Id. 439, 440. Public easements differ from private,
in that there is no dominant tenement; they are in gross. Id. 440.
Statutes providing means whereby lands may be dedicated to pub-
lic uses do not prevent such uses being created by dedication as
at common law. Id. 440, 441. Intention to dedicate must also
exist, and acts must be accompanied by declarations of intention
to dedicate, or acts must be such that intention is inferable. Id.
451-2. The intention to dedicate, to which courts give heed, is
not one hidden in the mind, but one manifested by acts. Id. 452.
No particular form is necessary to a common law dedication. Id.
453. It may be express, or implied from conduct. Tise v.
Whitaker-Harvey Co., 59 S. E. 1013; Elliott on Roads & Streets,
Sec. 124, 126. If intent to dedicate is inferable to an ordinarily
prudent man, by acts, and they are so received and acted on by
the public, the owner cannot thereafter recall the appropriation.
Id. Sec. 92.

The law relating to implied or common law dedication has
been quite fully laid down by our own supreme court. Mason v.

City of Sioux Falls, 2 S. D. 640; Larson v. C., M. & St. P. Ry. Co., 19 S. D. 284. Centerville Twp. v. Jenter, 126 N. W. 575; Lowe v. Sioux Falls Quarry Co., 126 N. W. 607; City of Watertown v. Troch, 125 N. W. 501.

Acts of owner are competent on question of intention to dedicate. 13 Cyc. of Law & Prac., 473; Lanaconing M. & F. Ry. Co. v. Consolidation Coal Co., 53 Atl. 429; Prouty v. Bell, 44 Vt. 72; Moffatt v. South Park Commissioners, (Ill.) 28 N. E. 975; Bartlett v. Beardsmore, (Ia.) 46 N. W. 494; Quinton v. Burton, (Ia.) 16 N. W. 569.

Three different results may be established by proof of user by the general public: (1) In those jurisdictions where it is permitted, proof of use by the public for the prescripitive period will conclusively establish a dedication and acceptance without any act of the owner; (2) where a highway can not be created by user alone, evidence of user by the public, even for a less time than the prescriptive period, with the knowledge and acquiescence of the owner, is evidence tending to establish the intention of the owner to dedicate the property to public use under an implied dedication; (3) when an intention to dedicate has been shown, user by the general public constitutes an acceptance of the dedication, which makes it complete and irrevocable.

Aside from these classes, where land has been used continuously by the public with the owner's acquiescence for such length of time that private rights and the public convenience and accommodation will be materially affected by an interruption of the enjoyment, a dedication will be presumed. Under these circumstances no specific length of user is necessary to constitute a valid dedication, but the length of time of enjoyment is a fact to consider as tending to prove an actual dedication and acceptance by the public. 13 Cyc. of Law & Proc., 482, 483.

In this connection it may be well to refer to our own statute, section 1632 of the Rev. Pol. Code of 1903. Sec. 1 of Sub-Chap. 11, Chap. 112, Laws of 1883.

Both of these sections were carried into the Compiled Laws of 1887 as sections 1227 and 1261 respectively, of the Political Code.

The supreme court of North Dakota has decided that the act of 1883 only related to highways which had been in public use and included in a road district for twenty years previous to that act, and that it did not impliedly repeal the former provision of the Code of 1877, which provided that highways might there-after be created by twenty years user. Walcott Twp v. Skauge, 6 N. D. 382, 71 N. W. 544.

Under section 3004 of the Code of Iowa of 1897, relating to easements in real estate, we cite: State v. Mitchell, 58 Ia. 567, 12 N. W. 598; State v. Birmingham, 74 Ia. 407, 38 N. W. 121; Duncomb v. Powers, 75 Ia. 185, 30 N. W. 261; Sherman v. Hastings, 81 Ia. 372, 46 N. W. 1084; Faulke v. Town of Agency City, 122 N. W. 823; Hanger v. City of Des Moines, 80 N. W. 549.

The dedication of a highway may be accepted in either of two ways. It may be accepted by the general public by entering upon and using it, or it may be accepted by the legally constituted authorities of the municipality or township in which such road lies. 13 Cyclopedia of Law and Procedure, 465, 466.

User by the general public does not usually impose upon the municipality the obligation to maintain the road. 13 Cyclopedia of Law and Procedure, 466.

Acceptance by the public authorities may be implied by some act or acts showing that the municipality has assumed control of the property dedicated. 13 Cyclopedia of Law and Procedure. 469-471.

Aside from the original acts of the owner in laying out and dedicating the highway to public use, followed by an acceptance by the public and by the township authorities, which creates an estoppel against the owner, we claim that the acts of the owners in recent years also create such estoppel.

*Taubman & Williamson,* for Respondents.

There is no evidence that David A. Waldron ever at any time consented, or that any other person consented to the public's use of the road in question. The fact that the public did travel over this way, in view of the statute above quoted, can have no effect. It is clear the township officials never considered it a pub-

lic highway, else why should they go to the owner for consent to work it; and why enter into a written lease for the way?

It is clear, also, that the owners for the past ten years have never considered it a public highway, as the lease made in 1904 with Yeomans clearly indicates. There is not a word of evidence that any person connected with this title ever at any time consented to the use of this way as a public way; and not a word of evidence to indicate that any owner of the property at any time ever intended to dedicate it as a public highway.

The mere fact that trees were planted in a row, two rods apart, would not indicate an intention to dedicate the road as a highway. We think the law is clear and specific upon this question, and is well stated in the following cases: Lawrence v. Ewert, 114 N. W. 709; Hardy v. Jasper, 14 Cal. 649; Elliott on Roads and Streets, Sec. 164; Cole College v. Cedar Rapids, 95 N. W. 267; Bradstreet v. Dunham, 21 N. W. 592; Hibberd v. Melville, 33 Pac. 201; Brown v. Stien, 57 N. W. 401; O'Malley v. Lumber Co., 119 N. W. 601; Erwin v. Dickson, (U. S.) 13 L. Ed. 25; Hogue v. City, 10 L. R. A. 673; Eckleberg v. Soaper, 1 S. D. 567.

HANEY, J. This is an action to enjoin the defendant from obstructing an alleged public highway. The appeal is by the plaintiff from a judgment in favor of the defendant, and an order denying the plaintiff's application for a new trial.

The defendant owns the N. W. 1/4 of section 12, township 123, range 64. The city of Aberdeen is partially situated in the S. W. 1/4 of the same section; the north boundary of the city being the south boundary of the defendant's land. Main street extends through the S. W. 1/4 of section 12, about 1,788 feet east of and parallel to the west line of the quarter. The plaintiff owns a half section directly north of the defendant's land. It is alleged in the complaint that continuing on a direct line north from the north end of Main street through defendant's land to the line between sections 1 and 12 is a strip of ground 80 feet in width, which has been in continuous and unobstructed use as a public highway for more than 20 years last past, with the knowledge and

consent of the owners of the adjoining land; that the same was dedicated to public use by the owners of the quarter section through which it is located; that such dedication was accepted by the public and by the proper officers of the civil township of Aberdeen; and that the defendant has closed such strip of ground, threatening to keep it closed. Certain facts are stated intended to show the plaintiff's special interest in having the alleged highway kept open. It also is alleged in the complaint by way of estoppel that the plaintiff, who was about to open and grade a continuation of the alleged highway through its own land, inquired of the defendant if it intended to close the same, and was informed that it did not; and, that relying on such statement, the plaintiff proceeded to open and grade a highway one mile long at an expense of $300. All these allegeations are denied by the answer, wherein it is alleged that, when the defendant purchased its land, there was outstanding a lease to the civil township of Aberdeen, executed by its grantor, leasing a way over and across the quarter, and that such way was then used by the public under such lease and not otherwise. The learned circuit court found, in effect, that the plaintiff has not such an interest as entitles it to maintain this action, that no highway across the defendant's land was ever dedicated by the owners thereof, or ever established in any manner provided by law, that the use of the defendant's land as a public highway was at all times under a lease between the owner and the civil township of Aberdeen, and concluded that the plaintiff was not entitled to the relief demanded in the complaint. As the record discloses no errors relating to the admission or exclusion of evidence which could have prejudiced any of the plaintiff's substantial rights, the only matter demanding attention is the alleged insufficiency of the evidence to justify the trial court's findings of fact.

(1) If the public has the right to travel on the strip of ground in dispute, it was acquired by prescription or by dedication. Assuming that the doctrine of prescription is applicable to public highways anywhere, it is subject, in this state, to the following statutory provisions not heretofore interpreted by this court: "All public highways, which have been or may hereafter be used

as such for twenty years or more shall be deemed public high-
ways.  Provided, that the continued use of any road or way here-
tofore traveled, or which shall hereafter be traveled, by the pub-
lic across any of the public lands belonging to the state, or across
the land of any private person, or upon and parallel to the right
of way of any railroad company, in this state, shall not be deemed
to have constituted such road or way a legal highway, or a charge
upon the town in which the same is situated; and no rights or
benefits shall inure to the public or any individual by the use
thereof." Rev. Pol. Code, § 1632.  The first sentence of this
section was in force when the state was admitted into the Union.
Rev. Pol. Code 1877, c. 29, § 37; Comp. Laws 1887, § 1227,
The other provisions were first enacted in 1893.  The later enact-
ment expressly repealed all acts and parts of acts inconsistent with
its provisions.  It was entitled: "An act to prevent the establish-
ment of highways upon public lands belonging to the state, pri-
vate lands, and on the right of way of railroads by user in
the state of South Dakota."  Laws 1893, c. 100.  It was enacted
at a time when there were large areas of unoccupied land belong-
ing to the state and to individuals, the topography of which per-
mitted and invited travel in all directions.  Persons walking or
driving from one place to another usually select the most direct
available route.  The custom of "angling" across unoccupied land
has prevailed since the earliest settlements.  It still prevails.  It
evidently was the purpose of the Legislature to prevent the es-
tablishment of public highways by operation of this custom.  The
enactment was wise and timely.  There is no valid reason why the
public should acquire the right to travel in any direction which
suits its convenience, across private property, without compensa-
tion, simply because it is permitted to do so, where there is an
established highway along every section line.  It might have been
contended with much force that the law of 1893 operated to re-
peal the former statute, but that question is not now material.  The
Legislature having incorporated the provisions of both statutes
into the Revised Political Code of 1903 as one section, effect
should be given, if possible, to all the language of the entire
section; the first sentence being so interpreted as to harmonize

with the plain and unambiguous meaning of the remaining portions. Hughes v. Board, 25 S. D. 480, 127 N. W. 613. This may be done by distinguishing the "public_highways" of the first sentence from the "roads" or "ways" of the proviso, by applying the former to routes of travel whose inception was justified by some claim of right, and by applying the latter to routes of travel whose inception was not so justified. [2] Under the statute thus construed, the evidence clearly justifies the conclusion that the public has acquired no prescriptive right to the strip of ground in dispute. It conclusively shows that, when the public began traveling across the land now owned by the defendant, it was unoccupied prairie; that different routes were traveled at diffent times and seasons; and that the inception of the travel was without claim or color of right. Such travel, though continued for more than 20 years, cannot create a presumption that the alleged highway was originally established pursuant to law by proper authority, because the statute expressly declares that "no rights or benefits shall inure to the public or any individual" by the use of such a "road" or "way" as the one involved in this action. The plaintiff's claim of a prescriptive right to travel across the defendant's land is precisely such a claim as the statute was designed to defeat.

Nor should the described strip of land be deemed a public highway, assuming the first sentence of section 1632 to be applicable, for the reason that the evidence is wholly insufficient to justify the conclusion that the same was used by the public as a public highway by 20 years or more before this action was commenced. Therefore, in any view of the statute and evidence, the decision of the trial court, so far as it relates to the question of prescription, should be sustained.

[3] An express dedication is not claimed. Concerning implied dedication as applicable to streets, this court has said: "One of the methods of acquiring the right to the use of land for a street is that of the implied dedication of the same by the owner of the fee. In an implied common-law dedication, the use of such land by the public as a street, with the knowledge of, and without objection by, the owner of the fee for a number of years, is

evidence of such dedication, and from such user by the public, without objection by the owner of the fee, a jury may presume an actual dedication of such street to the public use." "It may be stated as a general proposition that no particular formality is essential to an implied dedication or acceptance of land for a public use. Conduct on the part of the owner that is clearly expressive of an intention to dedicate usually amounts to dedication, if acted upon by the public in a manner which clearly justifies the inference of an acceptance." Mason v. Sioux Falls, 2 S. D. 640, 51 N. W. 770, 39 Am. St. Rep. 802; Larson v. Railway Co., 19 S. D. 289, 103 N. W. 35. The latter statement was repeated without modification and without reference to section 1632 in a case involving a county road. Centerville v. Jenter, 25 S. D. 314, 126 N. W. 575. Independently of that section, the situation of the land over which a way is claimed should exert an important influence upon the question of dedication. The same acts which would warrant the inference in cities and towns may be wholly insufficient in agricultural districts. 1 Elliott, Roads and Streets (3d Ed.) § 182. With respect to such "roads" as the one involved in this action, evidence of such user as is shown by the record on this appeal should not be regarded as alone sufficient to justify the inference of a dedication, either under the statute or the general rule heretofore announced by this court. There should be evidence of conduct on the part of the owner clearly expressive of a present intention to set apart a portion of his land to public use, acted upon by the public, in a manner which clearly justifies the inference of an acceptance. The evidence tends to prove that in 1889 a grantor in defendant's chain of title having in contemplation the platting of the quarter as an addition to the city of Aberdeen caused trees to be planted on each side of what would be a continuation of Main street, but the scheme was abandoned, the land was never platted, and the trees soon after died. No other conduct on the part of any owner of the land prior to its purchase in 1902 by the defendant's immediate grantor is disclosed which possibly could be construed as expressive of an intention to devote any part of it to public use. It may be assumed

that, if the platting contemplated in 1889 had taken place, a street corresponding to the strip of land in controversy would have been dedicated. But no plat was ever recorded, if one was ever made, the trees died, and the public continued, as before, to travel across the land as suited its convenience, by different routes at different times and seasons, until about 1902, when the defendant's immediate grantor caused the entire tract to be plowed. The trees certainly were planted with reference to a contemplated street, and not with reference to an existing or intended country road. It would be unusual for any one to donate a strip 80 feet in width through the center of a quarter section of land, unless the quarter was to be subdivided. It clearly appearing that a future statutory dedication was contemplated, conduct consistent with such purpose cannot be construed as evidence of an intention to dedicate in any other manner. The evidence discloses no act on the part of the defendant, or its immediate grantor, expressive of a present intention to set apart the strip in controversy to public use. Defendant may have purchased its land with the view of having it platted as an addition to Aberdeen. It may now intend, at some future time, to lay out a continuation of Main street, conforming to the strip of ground in controversy; but it is under no legal or moral obligation to do so, and, until it shall have done so, the public will have no right to travel thereon, in absence of proper condemnation proceedings.

[4] The contention that the defendant should be estopped from asserting its rights as against the plaintiff is clearly untenable. The plaintiff is not seeking to have the way kept open for its own use. Its alleged injury results from the exclusion of the general public, which it in no sense represents. Nor do the facts justified by the evidence work an estoppel in any view of the plaintiff's interest in the litigation. It appears that the plaintiff, contemplating the platting of its own ground, was about to grade a street or highway through the same in continuation of the alleged street or highway through defendant's land, thus connecting its proposed street with the principal street of Aberdeen. Having this in view, a representative of the plaintiff's had the following conversation with the defendant's secretary: "I had a

conversation with Mr. S. C. Hedger, the secretary of the defendant corporation, in regard to the prosecution of the work on our property, in the course of which the road was discussed by us. This was in his office. It had come to me that there was a possibility of this north Main street road being closed which, as I was a new comer, I knew nothing about. I was advised that Howard & Hedger claimed that it was private property, and it would be closed or might be closed, and, as our company had set out to spend a good deal of money for the purpose of directing traffic through the two quarters we had purchased, I proceeded to call at the office of Howard & Hedger. Mr. Howard was not at home, but I saw Mr. Hedger, and we had a conversation. I asked him if there was any truth in the reports of the closing of the road on north Main street that would cut off traffic, as we were building the road for the purpose of directing traffic through there. He said in reply that there had been serious consideration of closing that road for some years and particularly the last couple of years; and he said: 'As regards the prospects now, or intentions now, I have no idea that it will be closed.' " This conversation discloses no conduct inconsistent with the defendant's present contention. Mr. Hedger's reply to the plaintiff's inquiry was, in effect, a positive assertion of the defendant's right to close the way whenever it elected so to do. It gave actual notice to the plaintiff that the strip of ground to which it referred was claimed by the defendant to be its private property. It conveyed no intimation that the public would be permitted to use the strip for any definite period. If Mr. Hedger had stated, or admitted, that the strip was a public highway which could not be lawfully closed by the defendant, there might be some reason for claiming an estoppel. Under the plaintiff's own evidence there is none whatever. The plaintiff was not deceived, it was informed of the facts as they existed, and there was no agreement, with or without consideration, to keep the way open for any specified time, nothing which should preclude the defendant from excluding the public from the use of its private property whenever it deems proper to do so.

Therefore, assuming that the plaintiff has shown such an interest as entitles it to maintain this action, a proposition certainly not free from doubt, the judgment of the circuit court should be affirmed.

WHITING, J. (dissenting). As I read the evidence in this case, it appears absolutely uncontradicted that the owner of the quarter section of land over which the claimed highway runs, presumably with a view of thereafter platting such quarter section of land, laid out a highway running across said quarter section, the same being a continuation of the then and now Main street of the city of Aberdeen and extending in a line exactly conforming with such street. This highway was marked out by the planting of two rows of trees on either side thereof. It was opened to the public travel, and, to keep such travel within the bounds thereof, wires were strung along parts of such highway. The public did travel, some over the whole length thereof, and some leaving this highway to cut across the open prairie, and thus save distance to the objective point. The proper road officials did more or less work along such strip of land, and among other things done, placed a wooden culvert across such road where it crossed a low place. There is absolutely no evidence upon which to justify any holding that this strip was laid out as a private way. It did not extend to any land owned by the owner of this quarter section. Every particle of evidence points to the intent, upon the part of the owner of this quarter, that such strip was for the use of the public as a highway. Thus there was, under all the authorities as I read them, a complete dedication and acceptance thereof. That being true, no change of mind on the part of the then owner of the quarter section, nor any desire on the part of subsequent purchasers to destroy this easement vested in the public, could destroy such easement.

CORSON, J. I concur in the views expressed by Mr. Justice WHITING.