MARTINDALE, Appellant, v. DICKEY, Respondent

(38 N. W.2d 140.)

(File No. 9022. Opinion filed June 17, 1949)

**Lacey & Perry,** Sioux Falls, for Appellant.
**H. F. Chapman,** Sioux Falls, for Respondent.

ROBERTS, J.  Plaintiff claiming the existence of a partnership agreement with the defendant brought this action for an accounting, the appointment of a receiver and injunctive relief.  Defendant, owner of a 120 acre farm near Sioux Falls equipped with machinery, farm buildings and two dwellings, on or about July 1, 1941, entered into an oral agreement with plaintiff by which the latter agreed to work the farm.  Plaintiff agreed to furnish all the labor. The livestock, feeds and grains were to be owned jointly by them, and each party was to share equally in the net proceeds from the venture after the payment of operating expenses, exclusive of labor. Plaintiff then owned and resided on a neighboring farm. Defendant, the proprietor of a cafe in Sioux Falls, occupied one of the dwellings on the farm. Some time in November, 1941, plaintiff moved from his own farm of forty acres to the other dwelling on defendant's farm and continued to reside there until January, 1947,

when the parties agreed to terminate their relationship and authorized the Union Savings Bank, Sioux Falls, S. D., to sell at auction all jointly owned property. The net proceeds of the auction sale amounted to $7,763.52. Trial resulted in findings and conclusions determining the rights of the parties. The court entered judgment directing the bank to pay the sum of $151.24 to plaintiff, $133.50 to Clarence Young for services rendered as an accountant and the balance of the fund to the defendant. Plaintiff appeals.

■■■ A partnership is an association of two or more persons to carry on as co-owners a business for profit. SDC 49.0201. Such a relationship does not usually exist between the owner of a farm and the tenant who has undertaken to work it on shares. The fact that the parties may have a common right or interest in some of the property from which they may share returns does not in itself establish a partnership. Cedarburg v. Guernsey, 12 S. D. 77, 80 N. W. 159. The parties, however, have proceeded on the theory, and we may therefore assume for the purposes of this case, that the plaintiff and defendant were in fact partners.

■■■ The errors assigned involve the sufficiency of the evidence to sustain the findings of the court and its conclusions of law. It will be conceded as contended by defendant that when dealing with findings of fact this court will not weigh the evidence and the credibility of the witnesses since to do so would invade the province of the trial court. · If it cannot be said as a matter of law that the facts are other than as found, the judgment below will not be disturbed.

■■■ Consideration will first be given to plaintiff's claim that defendant having agreed to furnish all farm machinery the amounts expended for machine hire should be charged to defendant and that the latter should also be held to have agreed to pay to plaintiff the equivalent of the landlord's share of crops grown on leased land. The court found that defendant agreed only to furnish the machinery on the farm at the time of the making of the contract and that "there never was any agreement or understanding, express or implied, that the defendant should be personally charged with

the landlord's share of the crops, seed and harvesting on the Lackey 240 acres, and that the plaintiff should receive the same, or its equivalent in money."

Plaintiff's position is thus stated in his brief: "There was some disagreement between the parties as to whether or not the defendant agreed to furnish all the machinery or just such machinery as he had at the inception of the partnership relation. The defendant had no binder, ensilage cutter, or corn husker. The sum of $1,604.00 was incurred and charged to the partnership for custom binding, ensilage cutting and corn husking. The plaintiff contends that the undisputed evidence shows that the defendant agreed to furnish all machinery and that these machinery hire items should be charged to the defendant personally instead of to the partnership. * * * While the plaintiff believes that the evidence in this case shows an express promise on the part of the defendant at least to furnish the Lackey land to the partnership at his own expense, as distinguished from a promise to so furnish such land and to pay into the partnership the specific amounts yielded as share rent therefor, nevertheless, if it be assumed that the evidence is not sufficient to show such an express promise, then the plaintiff maintains that the evidence is such as to necessarily imply such a promise."

Plaintiff during the existence of the partnership kept an account of the partnership business, entering in such books of account items of receipts and disbursements. These records were submitted at different times to an accountant and statements of account were prepared. It was from these statements that the partnership prepared its income tax returns. The partnership records, audits and copies of the tax returns are in evidence. Plaintiff testified as follows: "Q. He said you could have it most any way you wanted it? A. He (defendant) said, how do you figure would be the right way? I said we would put our stock together and inventory it, and he would furnish the machinery and the land, and, against my labor and management and half of the stock. * * *

"Q. In 1943 what tracts did you farm? A. I got 80 acres of Lackey. * * *

"Q. Now, did you have any talk with Mr. Dickey about renting the 80 acres from Mr. Lackey? A. I did.

"Q. And what talk did you have with Mr. Dickey about that? A. I told him I could get the eighty of Lackey's on the east side of the road. * * *

"Q. And what did Mr. Dickey say when you told him you could get that? A. Wanted to know what the deal was and I told him had to give two-fifths and get three-fifths. He said he guessed that would be all right. * * *

"Q. Was anything said about who was to pay that two-fifths rent—the partnership or Dickey? A. No, there was not; there wasn't another word said about it. * * *

"Q. Did you have a conversation with Mr. Dickey about the 160 acres additional? A. The same as he did with the 80, only I told him we got three-fifths and two-fifths and the hay was one-half.

"Q. And the hay was one-half? A. Yes sir.

"Q. What did Mr. Dickey say to that? A. He just said all right. We had no land, that is, after it was flooded out every year, only that 20 acres—22." * * *

"Q. Now, when you started out on these farming operations, did you have any conversation with Mr. Dickey as to what portion of machinery he would furnish? A. Nothing said only he would furnish the machinery."

Defendant testified: "I can't repeat the exact conversation, but it was to this effect, that he would go in and share fifty-fifty all the money we could make there. I would put in the farm, keep it up, and let him use what machinery was on the place. There was no agreement made as to buying a lot of new machinery. * * *

"Q. Now, later on, was there anything said about the Lackey property? A. Yes. After we flooded out, why Cliff (plaintiff) said he had a chance to get 80 acres across the road there and thought it would be a good deal because our land was flooding and he would have to buy feed, if we

didn't raise it, and I asked him what basis we could get it on and he said we would have to pay two-fifths. I told him at the time, well, you will have to hire that done, because you got enough chores around here to keep you busy, and asked if he thought he could make a go of it, by paying two-fifths and hiring this labor done over there and he said he thought he could. * * *

"Q. Later on, did you have some more of Lackey's farm? A. The next year, I think, he took over the balance of it.

"Q. What conversation did you have with Mr. Martindale relative to that? A. Well, I told him that it was a pretty big operation, to take on all of that—that would be 400 acres— and I asked him if he had machinery enough to handle it. I said I was not in the farming business; I had a business of my own; I would not be interested in buying machinery to handle the rest of that; and he said he thought he could get along with what we had and maybe have to get a disk or a seeder, something like that.

"Q. Was anything said to you by Mr. Martindale that the landlord's two-fifths share would have to be paid by you? A. Absolutely not."

Defendant examined as an adverse witness before the trial testified:

"Q. Is it your position that you were going to pay one-half of the labor necessary to farm that land? A. Yes.

"Q. Is it your position that you were to pay one-half of the bill for the board of the men that worked on that land? A. I told Cliff I would agree to that * * *

"Q. Is it your position that you were to pay one-half of all threshing bills and all machinery bills, all bills for the hire of machinery? A. It was my position that we would pay all expenses against that together. I didn't expect— I told Cliff when he took it on he wouldn't have any time to work over there; we would have to hire it done. So it is still my position I would stand for half of the rent and half of the expense for farming that Lackey property."

▆▆▆ Mrs. Martindale corroborated her husband particularly with respect to the furnishing of farm machinery.

On the other hand, the testimony of the defendant was contradictory and it also appears that the items of machine hire were entered in firm books as partnership expenses. Such contradiction presented an issue of fact for the determination of the trial court. There is an entire absence of evidence tending to show that there was an agreement or understanding to the effect that defendant obligated himself to contribute an amount equal to the landlord's share on the Lackey land. It was the obligation of the partnership as tenant to deliver the landlord's share of the crop on this land and in the absence of an agreement between the parties, either express or implied, there is no basis for requiring defendant to account for an equivalent amount of such rentals. Defendant testified that he agreed to share and did in fact share additional expenses in farming the Lackey land. The statements of account referred to show that the partnership expended during its existence the sum of $3,221.16 for labor. Defendant under the partnership agreement contributed to the partnership the use of his 120 acre farm, but did not agree as part of his contribution to furnish other land. Accepting the conversations between the parties as testified to by the plaintiff in the light of the partnership agreement and the surrounding circumstances, we cannot agree with plaintiff's contentention that defendant indulged in conduct reasonably indicating his assent to contribute either to the plaintiff or the partnership an amount equivalent to the landlord's share of the crop on the Lackey land.

The court adjudged that plaintiff should recover from the partnership fund $448 for electricity. The statements of account referred to show that this sum was paid by defendant for electric current used for the partnership during the five year period. Plaintiff asserts that the item was "based upon an estimate and the amount is incorrect." We find from the record that when these statements of account were offered and received in evidence the parties through their respective counsel stipulated that "either party is permitted to offer contradictory statements to those contained" therein. Plaintiff testified that a separate meter "for the farming end" was installed and that through this

meter 7,626 K. W. H. of current were furnished. Without proof that this was all the elictricity furnished and that the cost of supplying the same was less than the amount allowed, we cannot say that the court erred in its finding.

Plaintiff excepted to the rulings of the court that each party pay one-half of the compensation of the accountant and that no costs be taxed.

This is a settlement of many accounts and it was difficult for either party to determine where he stood without the aid of an accountant. This the parties recognized and plaintiff at the suggestion of the defendant consulted an accountant. The record sustains the ruling of the court on this item.

It is the contention of plaintiff that where a party recovers any part of the sum sued for he is entitled under the provisions of SDC 33.1803(3) to judgment for costs. It is the express declaration of this statute that "Costs shall be allowed of course to the plaintiff upon recovery in the following cases: * * * (3) In an action of which a justice's court has no jurisdiction; * * *." Under the provisions of SDC 33.1804, the court in its discretion may allow costs in actions other than those specified in Section 33.1803. In Macomb v. Lake County, 13 S. D. 103, 82 N. W. 417, this court held that the provisions above quoted apply to actions at law and do not include equitable actions. There can be no question that the present action for a partnership dissolution and accounting is a proceeding in equity. Plaintiff having been accorded only part of the relief demanded, the trial court did not abuse its discretion in decreeing that no costs be taxed.

The judgment appealed from is affirmed.

All the Judges concur.