I am authorized to state that Justice WINANS joins in this dissent.

Daniel J. BRUSSEAU and Kathryn D. Brusseau, Plaintiffs and Appellants,

v.

Ed McBRIDE et al., Defendants and Respondents.

No. 11758.

Supreme Court of South Dakota.

Sept. 15, 1976.

---

* For a good statement covering all of the issues, I would suggest reading the dissent by Chief Justice Hallows in *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566, at page 572, which was joined in by Justices Wilkie and Heffernan.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellants.

Lynden D. Levitt, Rapid City, for defendant and respondent Ed McBride.

Julius F. Sieler of Sieler, Sieler & Trimble, Rapid City, for defendant and respondent Harold Bies.

A. P. Fuller of Kellar, Kellar, Fuller, Amundson & Furze, Lead, for defendant and respondent Homestake Forest Products Company.

William H. Coacher, State's Atty., Meade County, Sturgis, for defendant and respondent, Meade County.

ANDERST, Circuit Judge.

This is an appeal from a declaratory judgment action to determine the existence or nonexistence of a public road over the property owned by the parties herein. From a judgment declaring the road to have been dedicated under common law principles, irrevocably and to public use along its entire length, the plaintiffs have appealed. We reverse.

Our law is settled that "[c]onduct on the part of the owner that is clearly expressive of an intention to dedicate usually amounts to dedication, if acted upon by the public in a manner which clearly justifies the inference of an acceptance." *Larson v. Chicago, M. & St. P. Ry. Co.*, 1905, 19 S.D. 284, 103 N.W. 35. The legislature, to prevent the establishment of highways on public and private land by user, enacted Ch.

100, Laws of 1893 (now SDCL 31–3–2) which reads:

> "[t]he mere use by the public of any route of travel along or across public or private land, or the right of way of any railroad company for any period, shall not operate to establish a public highway and no right shall inure to the public or any person by such use thereof."

This court in *Roche Realty & Investment Co. v. Highlands Co.*, 1912, 29 S.D. 169, 135 N.W. 684; *First Church of Christ, Scientist v. Revell*, 1942, 68 S.D. 377, 2 N.W.2d 674; *Lacey v. Judge*, 1942, 68 S.D. 394, 3 N.W.2d 115, and *Stannus v. Heiserman*, 1949, 72 S.D. 567, 38 N.W.2d 130, has held that mere user will not support an inference of implied dedication. " * * * [W]hat amounts to a dedication by implication depends upon the facts of the particular case, and no hard and fast rule can be laid down as a guide for the courts." *Evans v. City of Brookings*, 1918, 41 S.D. 225, 170 N.W. 133.

The plaintiffs, Daniel J. Brusseau and Kathryn D. Brusseau, are the owners of a 10-acre, 660-square-foot tract of land, described as the southwest quarter of the southwest quarter of the northeast quarter of section 9, township 2 north, range 6, Black Hills Meridian, Meade County, South Dakota. The road in question runs from the Nemo road, a public highway in Pennington County, South Dakota, across U.S. Forest Service land, across Homestake Forest Products Company land, enters the Brusseau property near the southwest corner thereof, then proceeds in a northeasterly direction, passing approximately twenty feet to the east of the Brusseau house, exits the Brusseau land near the northwest corner thereof, crosses a corner of Harold Bies' land, then angles northwest across more Homestake Forest Products Company land until it enters land owned by Ed McBride or his controlled corporation, Rolling Hills Corporation, and several families who have purchased land from him. The road is the only access route for ingress and egress for these families except trails that are passable only in good weather in four-wheel-drive vehicles. Some members of the general public have from time to time used the road to gain access to hunting and fishing areas.

Until 1971, the road in question was a trail with rock outcroppings, mudholes and washes. No survey or plat has ever been made of the road, and the court did not find and the evidence does not disclose the exact location of the present road, its width or length. The facts do disclose that over the years the location of the road has varied and has been moved. Most times its location depended upon the weather and the conditions. Travel was across the easiest and most accessible route.

In December 1970, respondent McBride purchased 360 acres at the end of the road. He sold parts of this parcel to various individuals, some of whom built homes on this property. These families, some with children, have used the road continuously and on a daily basis since moving in. After purchasing the property, McBride met with the Meade County Commissioners to ask their assistance in rebuilding the road. They refused. Thereafter, in January 1971, McBride, without asking permission from anyone, began to reconstruct the road. The reconstruction generally followed the then existing road except for a minor change where it passed through Homestake property. This change was made after consultation with a Homestake employee. Also during this time, McBride had a conversation with one Mr. Leo Ausmann, the then owner of the Brusseau property, at which time Mr. Ausmann told McBride this was a public road and " 'I'm glad to have you get me out of the mud.' " During reconstruction, an old gate placed by Bies where the road entered his property was removed. This reconstruction took approximately four months, with a total outlay by McBride of $10,432.36.

In the summer of 1973, plaintiffs Brusseaus purchased their tract of land from the Leo Ausmann estate. The families in the Rolling Hills area continued to use the road on a continuing daily basis. After having a title examination, the Brusseaus found no easement of record showing the road across

their property. Accordingly, they posted signs stating the road across their property was private. They also dug a ditch through the road and placed rocks and boulders on the road to make it impassable. This lawsuit was then initiated asking for a declaratory judgment.

Respondent, Homestake Forest Products Company, in its answer denied this was a public road, as did respondent, Harold Bies, from the witness stand. Plaintiffs, Brusseaus, also claim the road was never dedicated to the public. Meade County has never expended any money for maintenance of the road and none of its equipment has ever been utilized in its maintenance or repair.

Findings of fact should not be set aside unless clearly erroneous, and due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15–6–52(a). However, we do not share the view of the trial court that these facts support an inference either that the owners of the property intended to dedicate this roadway to public use, or that the public accepted such a dedication.

This road was established and maintained by the affected property owners for their own mutual benefit and use. Up until the time McBride purchased his property and began selling building sites, the traffic on the road past the Brusseau and then Ausmann homes was light and sporadic. As this court said in *Stannus v. Heiserman,* supra: "Because there has been acquiescence in its user by an adjoining owner, and by some others, does not in our opinion manifest an intention to yield it to public use." Further, in the case of *Roche Realty & Investment Co. v. Highlands Co.,* supra, this court stated:

> "It conclusively shows that, when the public began traveling across the land now owned by the defendant, it was unoccupied prairie; that different routes were traveled at different times and seasons; and that the inception of the travel was without claim or color of right. Such travel, though continued for more than 20 years, cannot create a presumption that

the alleged highway was originally established pursuant to law by proper authority, because the statute expressly declares that 'no rights or benefits shall inure to the public or any individual' by the use of such a 'road' or 'way' as the one involved in this action. The plaintiff's claim of a prescriptive right to travel across the defendant's land is precisely such a claim as the statute was designed to defeat."

The principle pronounced in *First Church of Christ, Scientist v. Revell,* supra, wherein we quoted with approval the words of the North Dakota Court in *Cole v. Minnesota Loan & Trust Co.,* 17 N.D. 409, 117 N.W. 354, 17 Ann.Cas. 304, is applicable here as follows:

> " ' "[O]wnership of land once had is not to be presumed to have been parted with; but the acts and declarations relied on to show a dedication should be unequivocal and decisive, manifesting a positive and unmistakable intention, on the part of the owner, to permanently abandon his property to the specific public use. If they are equivocal, or do not clearly and plainly indicate his intention to permanently abandon the property to the public, they are not sufficient to establish a dedication. The intention to dedicate must clearly appear, though such intention may be shown by deed, by words, or acts. If by words, the words must be unequivocal, and without ambiguity. If by acts, they must be such acts as are inconsistent with any construction, except the assent to such dedication." ' "

We find no such unequivocal deeds, words or acts in the facts herein.

The trial court further found that the public had accepted this road prior to any attempted revocation. It is conceded the road was never formally dedicated, and the evidence is undisputed that Meade County nor any other public body at any time ever expended any public funds for construction, repair or maintenance of the road, nor claimed any ownership or control thereof. As we said in *Lacey v. Judge,* supra, which is apropos in this case, " 'Because public

acceptance of this claimed dedication is based solely on user by members of the public, we hold that the record fails to establish an implied dedication * * *.' "

■ South Dakota is still a friendly and neighborly state. Most of our farmers and ranchers allow their neighbors, as well as sportsmen, hunters and fishermen, campers, fossil and artifact seekers, free and unlimited access to and upon their property. Many of our finest fishing and hunting areas are owned and accessible only across private property. In a spirit of friendliness, many landowners have removed gates from their fences and replaced them with cattleguards to allow easier access. Others have even improved and graveled the roads to a dam, dugout, hunting or fishing area. To allow mere user of such roads and property to blossom to a public dedication would destroy much of this harmony and goodwill between users and landowners. This was one of the reasons why such a statute, SDCL 31–3–2, was initially passed and still remains the law so that a landowner did not have to fear such a consequence as the result of his neighborly actions.

■ Respondent McBride in his original answer also raised the affirmative claims of easement and estoppel. We feel that the facts and our prior holdings and cases cited do not justify such claims. We therefore hold that the trial court erred in drawing an inference of implied dedication to a public use of this roadway.

The judgment of the trial court is reversed.

WOLLMAN and COLER, JJ., concur.

DUNN, C. J., and WINANS, J., dissent.

ANDERST, Circuit Judge, sitting as a member of the Court.

ZASTROW, J., not having been a member of the Court at the time this case was orally argued, did not participate.

DUNN, Chief Justice (dissenting).

I would affirm the judgment.

The case of *Evans v. City of Brookings*, 1918, 41 S.D. 225, 170 N.W. 133, seems to sum up the position of this court on public dedication with this statement: "what amounts to a dedication by implication depends upon the facts of the particular case, and no hard and fast rule can be laid down as a guide for the courts * * *." The questions involved here are those applicable to dedication of a road by public use acquiesced in by the owners of the property traversed by the road over a period of fifty years. The pertinent findings of the trial court state:

"That Leo Ausman (sic), are the predecessor in interest of the land now owned by Plaintiffs, considered the road to be public and the said Leo Ausman (sic) did publicly state this intention and consideration in 1971; and that the said Leo Ausman (sic) did, while living on the property now owned by Plaintiffs, conduct himself in a manner revealing his belief and intention that the subject road was public. That in 1971 Mr. Ed McBride substantially improved the condition of the road in question and that such improvement was made without the objection of any persons or parties across whose land the road traveled."

These findings seem sufficient to support the judgment of a public dedication of a road if supported by the evidence. Thus, the issue before this court is whether there is evidence to support the findings of the trial court under the clearly erroneous rule. As we have indicated, it is the duty of this court on review to determine whether there is evidence to support the trial court's finding. *Chicago, Burlington & Quincy Railroad Co. v. Wheaton*, 1957, 76 S.D. 467, 80 N.W.2d 868; *Martindale v. Dickey*, 1949, 72 S.D. 595, 38 N.W.2d 140.

The road in question begins at the Nemo road, crosses U.S. Forest Service land for several hundred yards, Homestake Forest Products land for approximately one-half mile, touches one corner of the Bies property, crosses the Brusseau property for some 220 yards, and then proceeds to traverse further Homestake and other property not involved in this lawsuit.

Leo Ausmann, before his death in February of 1972, owned the land in question for many years where both Bies and Brusseau now reside and during the period when public dedication either did or did not occur. Thus the testimony in regard to Mr. Ausmann's statements and actions during his lifetime become more important in arriving at a factual conclusion.

Ed McBride testified that Leo Ausmann had told him that he considered it to be a public road and welcomed the improvement of the road to " 'get [him] out of the mud.' " This testimony standing alone is considered the "weakest kind of testimony" by the courts. *Mahan v. Mahan*, 1963, 80 S.D. 211, 121 N.W.2d 367. However, there were several things that made this testimony more credible. First of all, Leo Ausmann concededly never made any objection to the use of the road by the public during his lifetime; he never made any objection when the road was being improved right by his home or when several families began using the road after McBride sold homesites on his land. Mr. Ausmann built his house where Mr. Brusseau now lives to give easy access to this road. Mr. Brusseau purchased a homesite of ten acres from Leo Ausmann about the same time that McBride sold homesites further up the road. He is just one of a group that depends on the road to get from his homesite to the Nemo road. I am certain that he will not spread rocks or dig a ditch across this access between his homesite and the Nemo road.

This testimony is also bolstered further by Mr. McGrath who had been employed by Homestake since 1954. Homestake actually has more land being crossed by this road than any other party. McGrath stated that Homestake and others had used the road consistently, if intermittently, for the entire period without obtaining permission from anyone, and he considered it to be a public road.

The testimony of Bies, Brusseau and Damon Ausmann (son of Leo Ausmann) does not contradict the statements by McBride, although they did state that they never heard Leo Ausmann refer to this road as being public.

In view of this evidence, I cannot conclude that the trial court's findings were clearly erroneous, and I would affirm.

I am authorized to state that Justice WINANS joins in this dissent.