KARTERUD, Appellant, v. KARTERUD, Respondent.

(195 N. W. 972.)

(File No. 5366. Opinion filed November 15, 1923.)

1. **Navigable Waters—Riparian Rights—Lot Adjacent to Meander Line Connecting Two Lakes Held Riparian to Lake Boundaries One of Which Does Not Touch Lot.**

Where two lakes having a strip of land between them are meandered, and meander line runs from one to the other, a lot abutting the first lake but not the second lake and adjacent to the meander line connecting the two lakes is riparian to the second lake.

2. **Navigable Waters—Boundaries—Basis for Determining Ownership Between Meander Line and Shore Line of Lake Stated.**

Where the shore of a lake is substantially a circle, the center of the lake is the point of convergence of the lines marking their respective ownership of the land between the meander line and the short line, but where the lake is long and narrow, the thread may be used as the basis, if irregular two or more centers may be adopted with a thread between them.

Appeal from Circuit Court, Hamlin County, Hon. J. H. Bottum, Judge.

Action by Godthard G. Karterud against Dagmar Karterud. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Affirmed.

*M. J. Russell,* of Watertown, for Appellant,

Appellant cited: Sec. 1125, Code 1903; Sec. 6142, R. C. 1919; Secs. 2395, 4803, 4804, 4805, U. S. Compiled Statutes 1918.

GATES, J. This controversy is about the respective rights of the owners of lot 7 and lot 8, as shown by the following plat, to the land between the meander lines of said lots and the water line of Lake Marsh.

Lot 8 is the eastern portion of what would be the south half of the southeast quarter of section 20, but for the lake. The dotted line, S, T, would mark a portion of the western boundary of said "eighty" except for the lake. By the United States Govern-

ment survey the lakes now known as Lake Park and Lake Marsh were surveyed as one lake. The lines A, B, C, D, E, F, G, H, I, K, are the meander lines on a portion of the east side of such survey.. The lines L, M, N, O, P, Q, R, are the meander lines on a portion of the west side of such survey. The irregular line O, D, indicates the present water line on the south side of Lake Park. The irregular line Q, T, G, indicates the present water line on the north side of Lake Marsh. Plaintiff owns lot 8. Defendant owns lot 7. Plaintiff asserts ownership of all that part of what would have been the south half of the southeast quarter of section 20, but for the lake, that is not under water; that defendant is not a riparian owner of any portion of Lake Marsh, and that defendant has no right to any land south of the dotted line S, E. Defendant contends that the rights of plaintiff are confined to the portion of the land lying between lines drawn from points E and I to the center of Lake Marsh. It is conceded that both lakes are navigable within the definition announced in Flisrand v. Madson, 35 S. D. 457, 152 N. W. 796. The trial court found in accordance with defendant's contention, established the rights of the parties in accordance with the principles enunciated in Flisrand v. Madson, supra, Anderson v. Ray, 37 S. D. 17, 156 N. W. 591, and State ex rel Clark v. Deisch, 38 S. D. 560, 162 N. W. 365, and fixed a line from E southwesterly 6,579 feet to the center of Lake Marsh as the boundary line defining the rights of plaintiff and defendant to the land between the water line and the meander lines of lots 7 and 8, leaving the parties to agree upon the exact location of the line, or in default of such agreement providing for a referee to establish the line. Plaintiff appeals from the judgment and order denying new trial.

In Flisrand v. Madson, supra, we said:

"A meandered line is not considered a boundary line, but merely serves to define the sinuosities of the bank of the lake, and a means of ascertaining the amount of land in the fractional tract subject to sale, and which is to be paid for by the purchaser. St. Paul Ry. Co. v. Schurmeier, 7 Wall. 272, 19 L. ed. 74, and note page 972."

[1] But unquestionably, by reason of that portion of the meander line between D and E, lot 7 became riparian to Lake Marsh. Schlosser v. Cruickshank, 96 Iowa 418, 65 N. W. 344. In that case the court said:

"As a meander line is not a boundary line, the owner of land adjoining such meander line takes title to the high-water mark of the stream or body of water, if navigable, lying adjacent thereto."

[2]    The same theory contended for by appellant in this case was advanced in the case of Hanson v. Rice, 88 Minn. 273, 92 N. W. 982, but was decisively exploded. It was therein held that land between the meander line and the water's edge was to be apportioned by running lines from the intersections of the property lines with the meander lines to the center of the lake, and this, regardless of the fact whether the lake was navigable or nonnavigable, or whether the land was a reliction or was above water when the survey was made. With this pronouncement we agree, except as to the determination that the center of the lake is in all cases to be the ultimate objective point of the converging lines. In rivers, the thread of the stream is usually the basis for dividing shore accretions. 1 R. C. L. 245. If a lake is long and narrow, the thread of the lake might with propriety be used as the basis, or, if the lake is irregular in shape, two or more centers might be adopted with a thread connecting them. 1 R. C. L. 246. Such appears to have been the theory of the decision in Olson v. Huntamer, 6 S. D. 364, 61 N. W. 479, and 8 S. D. 220, 66 N. W. 313. The center of Lake Marsh as indicated in Exhibit B appears to have been located by the surveyor because of another portion of the lake to the southwest, not shown in full on the exhibit, which placed the center further south than it otherwise would have been. We are not convinced that the evidence was sufficient to sustain the finding that the center of Lake Marsh, as determined by the surveyor, was to be the point of convergence of lines drawn from points E and I. It may be that a center should have been established for the southwesterly part of the lake not shown upon Exhibit B, and another center for that portion shown upon the exhibit, and a thread line connecting them, and that a thread line should also be run from the latter center to the center of Lake Park. If the latter were done, then the lines from E and I would probably connect with such thread line, and they might not converge therein. The object to be arrived at is to divide up the reliction (or land between the meander line and the shore line, whether a reliction or not) in accordance with the respective frontage, and upon principles of equity, and giving

each riparian owner access to the water. 1 R. C. L. 246; Ann. Cas. 1914A, 481; Ann. Cas. 1918E, 998. Where the shore line of a lake is substantially a circle, of course the center of the lake is to be the point of convergence of the lines marking the respective ownership of the land between the meander line and the shore line, but, where the lake is irregular or narrow, the center of the lake ought not arbitrarily to be taken as the basis.

But appellant is not complaining that the center of the lake was erroneously located, nor that the line from E southwesterly to the center of the lake is improper as the dividing boundary line, if defendant, by reason of her ownership of lot 7, is a riparian owner of any part of Lake Marsh. Appellant's sole theory is that lot 7 is not riparian to Lake Marsh, and that he owns that portion not under water of what would have been the south half of the southeast quarter of section 20, except for the lake. Appellant's theory being wrong and he not claiming under any other theory, it must follow that the judgment and order appealed from should be affirmed.

Note.—Reported in 195 N. W. 972. See, Headnote (1), American Key-Numbered Digest, Navigable waters, Key-No. 36(2), Boundaries, 9 C. J. Sec. 69; (2) Navigable waters, Key-No. 36(2), Boundaries, 9 C. J. Sec. 69 (see 1925 Anno.).

For authorities discussing the question as to effect of meander line as boundary, see note in 42 L. R. A. 510.

Meander line or water line as basis for dividing accretions, see note in 12 L. R. A. (N. S.) 687.