BON HOMME COUNTY FARM BUREAU, Respondent, v.
BOARD OF COM. OF BON HOMME COUNTY,
Appellants.

(220 N. W. 618.)

(File No. 6234. Opinion filed July 14, 1928.)

176

*Wm. F. Hansen,* of Scotland, and *Payne & Olson,* of Vermillion, for Appellants.

*C. C. Puckett,* of Tyndall, and *Wicks & Quinn,* of Scotland, for Respondent.

POLLEY, J. This appeal grows out of an order made by the county commissioners of Bon Homme county on the 13th day of July, 1925, refusing to make an appropriation of $2,500 to carry on agricultural extension work in that county.

It appears from the record that the Bon Homme County Farm Bureau is a corporation organized under the provisions of sections 7951, 7952, R. C. 1919; that on or about the 1st day of July, 1925, the Bon Homme County Farm Bureau filed with the county auditor of said county the certificate provided for by section 7955, as amended by chapter 9, Laws 1925; that on the 7th day of July, 1925, there was filed with said board of county commissioners a petition signed by more than one-fourth of the electors of said county, requesting said board to appropriate $2,500 to be used for the purpose of carrying on agricultural extension work in said county. This petition was rejected by the board, and, from the order rejecting the same, an appeal was taken to the circuit court. Upon a trial in the circuit court, the decision of the county commissioners was reversed, and judgment entered directing the commissioners to make the appropriation as prayed for in the said petition. From this judgment the commissioners appeal to this court.

In appellant's brief, filed in this court, is the statement that it is conceded that this matter came before the circuit court on an appeal, from the resolution of the board of county commissioners, perfected by the farm bureau as appellant, and it is also conceded that:

"The only issue for determination in this section was whether the term 'shall,' used in subdivision 2 of section 7955, as amended by chapter 9 of the Session Laws of 1925, is mandatory in its terms, or whether or not under said statute the board of county commissioners have any discretionary power in acting upon it."

In order to understand the meaning of the word "shall" as used in subdivision 2 of section 7955 as amended, it is necessary to examine said section as it was prior to the amendment. Under the provisions of the said section before it was amended, a farm bureau could file with the county auditor a certified copy of its articles of incorporation, together with a petition signed by the president and secretary of such association, asking for an appropriation for agricultural extension work. It then became the duty of the board of county commissioners to make such appropriation; but it does not appear to have been the intent of the Legislature to make it mandatory upon the board to make the appropriation, for it is then provided that, if the board fail to make the appropriation,

the farm bureau may file a petition signed by one hundred or more of the freeholders of the county praying that the board submit the question of the appropriation to the electors of the county. Upon the filing of this petition, it became the duty of the board to submit the proposition of the appropriation to the electors of the county at the next general election. If a majority of those voting on the question voted in favor of the appropriation, it became the duty of the board to make the appropriation, and it is very clear that no further discretion was vested in the board; an affirmative vote on the question made it mandatory upon the board to make the appropriation.

Subdivisions 1 and 2 of section 7955, R. C. 1919, as amended by chapter 9, Laws 1925, read as follows:

"1. After the incorporation of any such county agricultural extension association under the provisions of this chapter, and the filing with the county auditor of a certified copy of its articles of incorporation, and after the secretary and treasurer of said association have certified such facts to the board of county commissioners of its respective county which certificate shall be filed with such board of county commissioners, the said board of county commissioners may appropriate from the general fund of the county such sum as may be needed to carry on the agricultural extension work in said county, which sum shall not exceed three thousand dollars ($3,000.00) per annum, except in counties composed of over thirty (30) congressional townships, there may be appropriated not to exceed one hundred dollars ($100.00) per township.

"2. After the incorporation of any such county agricultural extension association under the provisions of this chapter, and the filing with the county auditor of a certified copy of its articles of incorporation, and after the secretary and treasurer of said association have certified such facts to the board of county commissioners of its respective county, which certificate shall be filed with such board of county commissioners, and after the filing by said officers of the said association with said board of county commissioners of a petition of twenty-five (25) per cent of the electors of the county as shown by the vote for governor at the last preceding election, which petition shall be filed with said board of county commissioners on or before the first Wednesday after the

first Tuesday in July of any year, the said board of county commissioners shall appropriate from the general fund of the county a sum not less than twenty-five hundred dollars ($2,500.00) per annum, and not more than three thousand dollars ($3,000.00) per annum, to carry on the agricultural extension work in said county, except in counties composed of over thirty (30) congressional townships there may be appropriated not to exceed one hundred dollars ($100) per township."

██ ██ It will be noted that the first six lines of both subdivisions are the same. If the provisions of subdivision 1 are complied with the board is authorized to make the appropriation, but it is clear that the matter of making the appropriation is left discretionary with the board. If the appropriation is made, then none of the steps enumerated in subdivision 2 need be taken, but, if the appropriation is not made upon compliance with the provisions of subdivision 1, then the remedy of the farm bureau is to file the petition provided for by subdivision 2, and, if this is done, the board "shall" make the appropriation, and it is clear that this is intended to be mandatory. The word "shall," when used in a command to a public officer, is mandatory. People v. De La Mater, 213 Mich. 167, 182 N. W. 57.

The only change made by the amendment, in the effect of the law, is to substitute the petition of 25 per cent of the electors of the county provided for in subdivision 2 of the amendment, for the election provided for by section 7955 before it was amended.

But it is contended by appellants that, if subdivision 2 is treated as mandatory, the law offends the following constitutional provisions:

"The Legislature is prohibited from enacting any private or special laws in the following cases * * * regulating county and township affairs." Subdivision 4, § 23, of article 3.

"No tax or duty shall be imposed without the consent of the people or their representatives in the Legislature, and all taxation shall be equal and uniform." Section 17, art. 6.

" * * * Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only. * * * " Section 2, art. 11.

"No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same

terms shall not equally belong to all citizens or corporations." Section 18, art. 6.

"No person shall be deprived of life, liberty or property without due process of law." Section 2, art. 6, of the State Constitution.

And that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Section 1, art. 14, of the Constitution of the United States.

 We are unable to see how this law is subject to any of the above objections. It is uniform in its operation, and applies alike to all counties in the same class. It is in no sense a private or special law; it classifies the counties according to population and all counties in the same class are affected alike.

"A law which is general and uniform throughout the state, and operates alike upon all persons or localities which come within the relations and circumstances provided for, is not objectionable to the Constitution as wanting in uniformity." State ex rel Agricultural Society v. Robinson et al, 35 Neb. 401, 53 N. W. 213, 17 L. R. A. 383.

 The law certainly does not offend section 17 of article 6 of our Constitution because the tax is expressly provided by the Legislature. It is true that the law fixes a minimum amount of $2,500 in all cases, and this would require a higher rate of taxation in a smaller or poorer county than in the larger and richer counties; but this can be avoided by taking advantage of the provisions of section 7952, R. C. 1919, which permits two or more counties to unite in the employment of one county agent to take charge of the agricultural extension work in said counties. But in any event this provision of the Constitution means only that the tax must be uniform and equal in the same taxing district. Norris v. City of Waco, 57 Tex. 635; City of East Portland v. County, 6 Or. 62. So long as a tax is uniform throughout the county, this provision of the Constitution is complied with: State ex rel Simson v. Meeker, 182 Ind. 240, 105 N. E. 906. And, where a tax is equal and uniform in its application to all persons of the same

class within a particular taxing district, it complies with the provisions of section 18, art. 6, of our Constitution. Bon Homme County v. Berndt, 13 S. D. 309, 83 N. W. 333, 50 L. R. A. 351.

That the tax to be levied under this law is for a public purpose cannot be questioned. The work to be performed by farm bureaus is educational. It is done under the direction of the faculty of the State College at Brookings. While the law provides for instruction along agricultural lines only, it is no more "class" or "special" legislation on that account than a law that authorizes the collection of taxes to maintain a school of law or medicine or engineering. In State ex rel Farm Bureau v. Miller et al, 104 Neb. 838, 178 N. W. 846, a case on all fours with this, the Supreme Court, in considering the same questions that are presented in this case, say:

"Federal and state bureaus and county farm bureaus are educational in their nature. All are agencies through which important discoveries and scientific knowledge essential to the proper tilling of the soil and to stock raising are communicated to farmers. Instruction in fertilization of land, in selection of seeds, in destruction of pests, in diseases of domestic animals and in kindred subjects, is imparted directly to husbandmen for practical purposes. Research of this nature and dissemination of resulting knowledge are proper functions of government. * * * The question here is not whether the Legislature has adopted the best means of disseminating agricultural knowledge, but whether the purpose is a public one, to which funds raised by taxation may be applied. The supply, quantity, and character of food affect the public at large, and in trusting a county farm bureau to deal with those subjects in an educational capacity the Legislature was clearly within the taxing power of the state. This conclusion disposes, also, of the contention that the act is void as special or class legislation."

We fail to find that the statute involved in this action violates any of the provisions of the Constitution of this state or of the Constitution of the United States.

The judgment appealed from is affirmed.

BURCH, P. J., and SHERWOOD and BROWN, JJ., concur.
CAMPBELL, J., dissents.