KAPP, et al., Respondents v. HANSEN et al., Appellants

(111 N.W.2d 333)

(File No. 9917. Opinion filed October 24, 1961)

Rehearing denied November 27, 1961.

**Everett A. Bogue,** Vermillion, for Defendant and Appellants.

**Woods, Fuller, Shultz & Smith, M. T. Woods,** Sioux Falls, for Plaintiffs and Respondents.

BANDY, Circuit Judge. This is a proceeding, alleged in the Complaint to be brought under SDC 1960 Supp. 37.13 and 37.15, to establish interior boundary lines and quiet the title to a large tract of land, conceded to be accretive, formed in an area where the Missouri River moved South of its original course. The parties are the owners of the meandered lands situated in Section 16.

The following sketch was prepared from information contained in the record. It is not detailed and is intended only to show the location of the various lands involved. The line A-B indicates the meander line. The line X-Y indicates the riparian line at about the time this action was before the Circuit Court.

16

1 2 3

A

4

Accretion Land

1

2

22

3

4

1

2

27

X

B 3

Missouri River

Y

- 1 -

From the record it is immediately apparent that the meander line describes an arc running from South to West. In so doing it impinges upon lands in Sections 27, 22, and 16 in the Township involved. The meandered lands in both sections are contiguous to the accreted land. There

is no showing that any of the owners of meandered lands in Sections 27 and 22 are parties to this action.

The status of accretion land and the ultimate rule as to its apportionment is thus stated in Karterud v. Karterud, 47 S.D. 58, 195 N.W. 972, 974:

> "The object to be arrived at is to divide up the reliction (or land between the meander line and the shore line, whether a reliction or not) in accordance with the respective frontage, and upon principles of equity, and giving each riparian owner access to the water."

While SDC 1960 Supp. 37.1301 provides that:

> "An action may be brought in the Circuit Court by any person owning land or any interest therein against the owner or persons interested in adjoining land to have the boundary lines thereof established."

Reference to the opinions to be found in various jurisdictions pertaining to the establishment of boundary lines has not been helpful. In the main these cases dealt with situations in which some boundary line had existed but the same was lost, uncertain or disputed. Here the situation is considerably different.

If this case involved only the ascertainment and judicial location of an existing boundary line that had been lost, had become uncertain or was in dispute, the owners of adjacent lands would probably not even be proper parties. But here, by the very nature of apportionment, none of the owners of the meandered lands could be said to own a specifically defined tract (excepting the area claimed under adverse possession) and hence no boundaries would exist until apportionment had been made. If it were otherwise no need for equitable apportionment would exist and a common law action in ejectment would be adequate.

Until there has been an apportionment of accreted land, or an acquisition of a specific tract in some other man-

ner, the extent of the individual interests and boundaries thereof are, at least, uncertain. SDC 1960 Supp. 51.1104-1 recognizes this. While it cannot be said that the owners of the meandered lands hold the accretion as tenants in common, aspects of partition are necessarily present in a proceeding for apportionment.

In 56 Am.Jur. at page 905, on the subject of apportionment, it is written:

> "A rule or mode approved in many cases, unless it results in such inequalities as to make it inequitable, is to give the several riparian proprietors a frontage on the new shore, proportional to their frontage on the old one, connecting the respective points by straight lines."

and at page 906 of the same work it is further written:

> "One common principle which pervades all modes of division is that no regard is necessarily to be paid to the direction of the side lines between contiguous proprietors; the reference ordinarily is entirely to the shore line."

Since the meander line constitutes an arc it is clear that apportionment boundary lines extended therefrom in accordance with the above rules would, of necessity, converge. Hence the apportionment boundaries normally to be established under the rule of the Karterud case, supra, would, as to the meandered lands in Sections 27 and 22 pursue a Southwesterly course across the accretion. Contrary to the above rules the Decree herein apportions substantially the entire accretion between the owners of the meandered lands in Section 16 and in so doing virtually excludes the owners of meandered lands in Section 27 and 22 therefrom. In addition they are thereby cut off from access to the water.

The Appellants assign error in the adoption of Amended Finding XI. In his Supplemental Brief counsel for Respondents substantially concedes the absence of

evidence to establish a Southerly prolongation of the Section line between Sections 16 and 22 as the Eastern boundary of the accreted land. We concur in this view.

Upon the oral argument it was conceded that such Decree is not binding upon the owners of meandered lands in Sections 27 and 22. Should these owners subsequently claim and seek apportionment of those portions of the accretion to which they are, prima facie, entitled and be successful, completely inequitable results would follow as to the Appellants herein. They would (1) lose a major portion of the land apportioned to them herein, (2) be cut off from access to the river, and (3) being bound by the decree herein as against the parties hereto, would have no recourse against the adjoining owners to the West.

The question is then presented as to whether the owners of meandered lands in Sections 27 and 22 are indispensable parties to this action?

In Weitzel et al. v. Felker et al., 76 S.D. 216, 76 N.W.2d 225, 226, this Court said:

> "There are three classes of parties to an action in equity: 'Formal parties,' who may be omitted at the option of [the] complainant; 'necessary parties,' who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that the court can, without injustice, proceed in their absence; and 'indispensable parties,' whose interest is such that a final decree cannot be entered without affecting them, or that termination of controversy in their absence would be inconsistent with equity." (Citations omitted.)

While the Weitzel case, supra, involved partition, the rule was therein stated as, and it of course is, the rule in equity and is by no means limited to partition proceedings.

The definition of "indispensable parties" is somewhat amplified in 67 C.J.S. Parties § 1, at page 892, where it is written:

"An indispensable party is a party who has such an interest in the controversy or subject matter that a final adjudication cannot be made, in his absence, without injuring or affecting such interest; a party who has not only an interest in the subject matter of the controversy, but also has an interest of such a nature that a final decree cannot be made without affecting his interest **or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.**" (Emphasis supplied.)

The statute under which this action was brought recognizes and embodies such rule: SDC 1960 Supp. 37.1302 provides:

"When in any such action it appears to the Court that any * * * person interested in any of the tracts involved ought, for a full settlement and adjudication of all the questions involved, to be made a party, the Court **shall** stay the proceedings in said action and order that they be made parties defendant and be served with the summons therein." (Emphasis supplied.)

"The word 'shall,' when used in a command to a public officer, is mandatory." Bon Homme County Farm Bureau v. Board of Com'rs of Bon Homme County, 53 S.D. 174, 220 N.W. 618, 620.

In 55 C.J.S. at page 659 the term "mandatory" is thus defined:

"The principal technical use of this word as an adjective is in distinguishing statutes which must be obeyed, according to the substantial import of their terms under sanction of having the

act or proceeding adjudged void, from those which ought to be obeyed, but, if disobeyed, do not invalidate what is done under them; enactments of the latter class are called 'directory.'"

In Burke Lumber & Coal Co. v. Anderson, 1956, 162 Neb. 551, 76 N.W.2d 630, 633, the Court, applying a statute of similar import wrote:

"When the determination of a controversy cannot be had without the presence of new parties to the suit, the statute directs the court to order them to be brought in." (Citations omitted)

"Indispensable parties to a suit are those who not only have an interest in the subject matter of the controversy, but also have an interest of such a nature that a final decree cannot be made without affecting their interests, **or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.**"

"When it appears that all indispensable parties to a proper and complete determination of an equity cause were not before the district court, the Supreme Court will remand the cause for the purpose of having such parties brought in even though no proper objection was made by any party litigant." (Emphasis supplied.)

■ While it is recognized that the Trial Judge has a discretion as to the necessity for inclusion of "necessary parties" which will not be reviewed in the absence of a showing of abuse thereof, no such discretion exists as to "indispensable parties."

■ In now holding that the owners of meandered lands in Sections 27 and 22 are indispensable parties this opinion should not be understood or construed to indicate that all persons who conceivably might have an interest are considered indispensable parties. It is expressly

limited to this instance in which it indisputably appears upon the face of the record that there are persons not made parties who have prima facie or apparent interests of such a nature as would leave the controversy in such a condition that its final determination in their absence might be wholly inconsistent with equity and good conscience.

In the trial of this case questions arose as to whether the original meander line surveyed in 1860 or a new line referred to as the "break" or "drop-off" located by the Findings as being 170 to 180 rods South of the meander line should be used as the base line for apportionment, and as to whether one of the parties was entitled to use a southern boundary enlarged by conceded adverse possession as a base line upon which to predicate his claim to apportionment of the remainder of the accretion.

We think that Chapter 214, Laws 1941, now SDC 1960 Supp. 51.1104-1, clearly provides that the original meander line controls for apportionment purposes in the absence of rights acquired by agreement or adverse possession as hereinafter pointed out. This statute requires utilization of the meander line rather than the "bank" or "drop-off" as the base line in the instant case.

Upon the trial it was conceded that one of the parties has acquired title to a portion of the accreted land by adverse possession. The effect of this was to continue or prolong the boundary line between lots 2 and 3 in a generally Southern direction to the point fixed by the "big cottonwood tree", which tree is about midway between the meander line and the present river bank. This line is considerably East of the boundary line which would be laid down if the rule in the Karterud case, supra, was literally followed. The owner of a lot 2 claimed to be entitled to apportionment of the lands lying South of the "big cottonwood tree" as accretions to the land held by adverse possession. In its Decree herein the Trial Court used due North and South lines as apportionment boundaries which resulted in a line somewhat East of the line

established by adverse possession. Accordingly, the question as to the right to claim accretion land contiguous to the land held by adverse possession was not material to decision. As this question may become important with further proceedings herein, we observe that the apportionment rights of the parties hereto stem solely from their ownership of riparian lands.

> "It is fundamental in the law of accretions that the land to which they attach must be bounded by the water to entitle its owner to such increase." 56 Am.Jur. pg. 898, § 485.

> "Briefly, a riparian proprietor is one whose land is bounded or traversed by a natural stream, and riparian rights are those which such a proprietor has to the use of the stream or water. 'Riparian' is from the Latin word 'riparius,' of or belonging to the bank of a river, in turn derived from 'ripa,' a bank, and is defined as 'pertaining to or situated on the bank of a river;' the word has reference to the bank, and not to the bed of the stream." 56 Am.Jur. pg. 726, § 273.

It follows that accretions could not attach to a tract held adversely unless at some time during the period of adverse possession such tract was riparian.

In 1 R.C.L. at page 235 it is written:

> "* * * it is not necessary that such possession of the accretion should be held for the statutory period to give a possessory title, because title to it follows title to the mainland; and when the latter is held under the conditions and for the length of time required by law to vest the title in the possessor, the title to the accretion follows, even though the deposit had been made but a year or a day. One who acquires title to the mainland by adverse possession acquires title to cover deposits made and making on his front and during the period

in which his possessory title was forming. The accretion grows into the land, and grows into the title of him who holds the land as the title itself grows, and when the title to the mainland has become perfect it extends over the accretion, however recent its formation."

This rule is restated in the more modern work, 1 Am.Jur. at page 847, § 99, in the following language:

"And one who has acquired title to land by adverse possession is entitled to any accretions thereto, regardless of the time of their formation."

This rule has been recently applied in Peterson v. Harpst, Mo., 247 S.W.2d 663; Briard v. Hashberger et al., 107 Neb. 199, 185 N.W. 430; Burket et al. v. Krimlofski et al., 167 Neb. 45, 91 N.W.2d 57. Notes are to be found in 58 L.R.A. 209 and 42 L.R.A.,N.S., 384.

The Decree herein must be reversed and the matter be remanded for inclusion of those additional persons indisputably shown by the record to be prima facie entitled to share in the apportionment of the accretion land involved herein, and for further proceedings in conformity herewith. Costs will not be taxed.

BANDY, Circuit Judge, sitting for BIEGELMEIER, J., disqualified.

SMITH, P.J., and RENTTO, J., concur.

ROBERTS and HANSON, JJ., dissent.

ROBERTS, J. (dissenting). I dissent. The conclusion of the majority with respect to nonjoinder of parties defendant seems to disregard the wording of the statute in question and to subvert its purpose.

Respondent, plaintiff below, is the owner of government lot 2, section 16, township 92, range 52, Clay County, South Dakota. Appellants, defendants below, are the owners of government lots 3 and 4 in the same section which lie immediately east of lot 2 and defendant Martin R. Han-

son who has not appealed is the owner of government lot 1 adjoining the premises of the plaintiff on the west.

This action was instituted May 1, 1942, to have the east and west boundary lines of the accretion to lot 2 south to the Missouri River established and to quiet title to the accretion between such lines. The claim of absence of indispensable parties defendant was not made in the trial court. This court reverses the judgment and on its own motion remands the cause with the equivocal direction that persons indisputably shown by the record to be entitled to share in the apportionment of the accretion land involved herein be joined as parties. A defect of parties is not in a strict sense jurisdictional, and where there is such a defect the action should ordinarily be continued in the trial court until they can be brought in as parties. A court cannot adjudicate directly upon a person's right without him being either actually or constructively before the court.

We have a statute wherein the procedure to be followed in actions for the establishment of boundary lines and determination of adverse claims to any portion of the land involved is prescribed. SDC 1960 Supp. 37.13. With respect to parties, SDC 1960 Supp. 37.1302 specifically provides that "any owner, lienholder, or person interested in any of the tracts involved" may be made a party defendant. The general rule appears to be that it is not necessary to force into litigation owners whose lands are not adjacent to a disputed boundary even though they may be incidentally concerned in the controversy. See Annotation in 137 A.L.R. 726. The following statement in 119 Am.St.Rep. 66, states the reason for such holding: "It may be that the establishment of the boundary may incidentally affect persons whose lands are not contiguous to the complainant's; that is to say, the defendant, if it be established that what he claims as his line must be moved in a particular direction, may, in turn, claim that another of his boundaries should be changed correspondingly, and in changing it, that an encroachment must be made on the

lands claimed and possessed by one who is not a party to the suit. This does not require that such third person be made a party defendant. If it did, the latter might make a similar claim respecting some other person, and the process of bringing in new parties might become interminable."

The statutory rule above quoted authorizes the trial court to join parties "interested in any of the tracts involved" in order to avoid a multiplicity of suits and to determine the rights of all the persons who have a direct interest in the subject matter of the litigation. Upon the trial court rests the burden initially to determine who should be joined as parties. It is a matter of judgment to be exercised with reference to the facts and circumstances of each case rather than by general or arbitrary rules. The principal issue here is the determination of the east and west boundary lines of lot 2 in section 16. Consideration of the record fails to disclose that under any theory presented will the lines decreed encroach upon riparian lands belonging to third parties. The interests of owners in the accretion land mass other than present parties are at most consequential rather than direct. The majority concludes that owners of meandered lands in sections 27 and 22 are indispensable parties who together with other persons entitled to share in the apportionment of the accretion lands as I understand the court's mandate must be brought in as defendants.

Reverting to the statute above cited, we find that courts having equity jurisdiction are given special and limited statutory jurisdiction. This is not to say that the location of a boundary may not be adjudicated in another form of action where for instance title to real estate may be involved. The statute unquestionably resulted from a valid exercise of legislative power. This remedy for location and determination of boundary lines was here invoked by respondent and appellants do not assert that the remedy is not appropriate and adequate. No claim is made that the right to have an equity matter dealt with by established

equitable methods has been infringed. The procedure outlined in the statute should in my opinion be followed and the final determination of the claims of the parties directly involved should not be unduly hampered by procedural obstacles.

The judgment having been reversed and cause remanded with directions to join other riparian owners as defendants, it would appear that the judgment below has in effect been vacated and that this requires a retrial of the action. We do not then reach the other contentions presented. This includes the claim of respondent that the use of section line monuments for east and west extremities in a survey ordered by the court did not detract from the validity or equity of the court's decision. It should be observed too that original sidelines of riparian lands may be extended if it results in equity, but their direction does not necessarily determine the course of the sidelines across accretion land and may be ignored. This the trial court in its memorandum opinion recognized and sought to apply the rule in the case of Karterud v. Karterud, 47 S.D. 58, 195 N.W. 972, as a basic guide.

Counsel on reargument called our attention to the fact that certain other riparian owners have agreed upon accretion lines. This is also indicated by exhibits in evidence. It is undoubtedly competent for adjoining riparian owners to make such agreements if the dividing lines do not encroach upon accretion lands belonging to third persons.

HANSON, J., concurs.