FEIGHT, Appellant v. HANSEN, Respondent

(131 N.W.2d 64)

(File No. 10112. Opinion filed October 27, 1964)

**Woods, Fuller, Schultz & Smith,** Sioux Falls, for plaintiff and appellant.

**Bogue & Weeks,** Vermillion, for defendants and respondents.

LAMPERT, Circuit Judge.   This is an action commenced in May of 1942, under SDC 37.13 and 37.15, to establish boundary lines and quiet title to accretion to Lots 1, 2, 3, and 4 of Section 16, Township 92, Range 52, in Clay County, South Dakota.   In the year 1861 the original government survey was made at which time the said lots were bounded on the south by the Missouri River which formed an arc bounding the aforementioned lots on the south and certain lots in Sections 22 and 27 on generally the west.   The Missouri River gradually receded forming a sub-stantially more easterly westerly line, leaving a large area of accretion land to the south of the said Lots 1, 2, 3, and 4 of Sec-

tion 16, the distance between the south boundaries of said lots according to the 1861 survey, and the Missouri River, at the time of commencement of the action, being substantially in excess of one mile.

The case was initially tried to the court below culminating in judgment entered on July 7, 1960, and came to this court on appeal. Kapp v. Hansen, 79 S.D. 279, 111 N.W.2d 333.

For the purpose of explanation the following rough sketch is made, without any attempt to make the drawing according to scale or the lines thereon shown with accuracy.

Line O represents the original meander line of the Missouri River as it existed at the time of the original government survey made in 1861, and line P - Q represents the course of the river at the time of the commencement of this action in May of 1942. The area between line O and line P - Q consists of accretion formed by the receding of the Missouri River. The owners of the lots in Sections 22 and 27 of Vermillion Township and the owners of lots abutting line O in Norway Township were not made parties to this action, and we reversed and remanded for inclusion of indispensable parties. Kapp v. Hansen, supra.

During the long course of the litigation both before and since the former appeal to this court, the interested parties changed both by reason of death and various conveyances of interest, and by leave of court, substitution of parties was made and amendments to the pleadings allowed.

As is shown by the stipulation of the parties, supported by exhibits showing conveyances and agreements, at the time of retrial the present plaintiff, Will Feight, was the owner of Lots 1 and 2 of Section 16, Township 92, Range 52, Clay County, (Vermillion Township) and Hans P. M. Hansen and Eldon Hansen are the owners of Lots 3 and 4 of said section. The same stipulation provides that aerial photographs by the U. S. Department of Agriculture marked Exhibits A and B be offered and received in evidence; that the same are true and correct aerial representations of the land in controversy in this action, and any and all accretions to government lots in Sections 16, 22 and 27 in Vermillion Township and lots in Sections 19, 18 and 17 in Norway Township.

The sketch roughly shows the material area shown on Exhibits A and B together with the lines established by K. E. Benson, a qualified civil engineer, as stipulated by the parties. By agreement between the plaintiff's predecessors and owners of lots to the west in Norway Township the boundary was established across the accretion lands to the present (1942) location of the Missouri River, and is shown on Exhibit A as line S, the same likewise being shown on the sketch as line S.

By agreement, between defendants and the owners of lots in Sections 22 and 27 in Vermillion Township, the boundary was established across the accretion lands to the present (1942) location of the Missouri River and is shown on Exhibit A as line U, the same likewise being shown on the sketch as line U. The east and west boundaries across the accretion to Lots 1, 2, 3 and 4 having thus been established, and the only dispute being as to the boundary line across the accretion to Lots 2 and 3, and the parties having stipulated that such boundary should in no event be established to the Missouri River so that it reaches the Missouri River southeast of line U, or west of line S, there are

no other parties to the action. There now being no other proper or indispensable parties, the directive in our opinion in Kapp v. Hansen, supra, is eliminated.

The engineer Benson drew straight lines on Exhibits A and B marked R across the accretion land mass from the boundaries of the lots along the river under the original government survey as evidenced by line O to the Missouri River as presently located, line P - Q, in such manner as to apportion to each of said lots under the original government survey the same proportion of river frontage on the river that such lot had under the original government survey. The apportionment or division line as so drawn from the southeast corner of Lot 2 to the river runs south twenty degrees ten minutes west, and is identified by letter X on Exhibit A, and is so identified on the sketch.

The letter T as shown on the sketch marks the approximate location of a large cottonwood tree which is a landmark in this case, and was identified by and referred to by various witnesses. It is located practically due south of the south corner common to Lots 2 and 3 according to the original government survey, a distance of 194 rods.

The trial court entered findings of fact and conclusions of law. The findings insofar as the same are material to the matter before us are as follows:

"10.

"* * * That the division or boundary line across the accretions to Lots 2 and 3 of said Section 16 runs south twenty degrees ten minutes west from the southwest corner of Lot 3 to the present location of the Missouri River.

"11.

"That the plaintiff and his predecessors in interest have for more than twenty years prior to the commencement of this action maintained a fence or boundary line from the southeast corner of Lot 2 in said Section 16, south to the big cottonwood tree which is located 48.5 chains or 194 rods south of said southeast corner

of said Lot 2, openly, notoriously and adversely to any rights or claims of the defendants or their predecessors in interest.

"12.

"That there were fences erected south of the cottonwood tree by either the defendants or their predecessors in interest, or the plaintiff's predecessors in interest, these fences ran generally in a southern direction from the big tree and were not in a straight line but ran from tree to tree; these fences were put in more than twenty years before the commencement of this action and were maintained and the land west thereof was pastured by plaintiff's predecessors in interest until 1942 when a new diagonal fence was put in by defendants during this action.

"13.

"That none of the accretion lands south of the big tree were used or occupied by plaintiff's predecessors in interest, continuously for more than twenty years prior to the commencement of this action."

The trial court by its conclusions of law determined the division or boundary line between and across the accretions to Lots 2 and 3 in Section 16, Township 92, Range 52 ran from the southeast corner of Lot 2 south twenty degrees ten minutes west to the Missouri River. That the plaintiff is the owner of all accretions to Lots 1 and 2 of said Section 16 lying west of a line from the southeast corner of said Lot 2 south twenty degrees ten minutes west to the Missouri River, and that part of the accretions to Lot 3 in said Section 16 described as commencing at a point 194 rods south of the southeast corner of Lot 2 for a point of beginning, thence north to said southeast corner of said Lot 2, thence south twenty degrees ten minutes west to a point due west of said point of beginning thence east to the point of beginning. (For clarity we have designated the triangular tract of accretion to Lot 3 determined to be the property of plaintiff by the letters P T A.)

That the defendants are the owners of the accretions to Lots 3 and 4 of said Section 16 lying east of a line from the south-

west corner of said Lot 3 south twenty degrees ten minutes west to the Missouri River, except that portion of said accretions to Lot 3 described as commencing at a point 194 rods south of the southeast corner of Lot 2 of said Section 16 for a point of beginning, thence north to said southeast corner of said Lot 2, thence south twenty degrees ten minutes west to a point due west of said point of beginning, thence east to the point of beginning (our designated tract P T A). The conclusions of law determined the west boundary of the accretions owned by plaintiff and east boundary of accretions owned by defendants, but such east and west boundaries are immaterial to the matters for determination by us. Judgment was entered in accordance with the conclusions of law.

The appellant contends that the clear preponderance of the evidence establishes that a fence was constructed and maintained from the southeast corner of Lot 2, as established by the original government survey, practically due south to or substantially to the present location of the Missouri River for more than twenty years prior to the commencement of this action, by the parties or one of them, or their predecessors; that such fence was either agreed upon or acquiesced in as constituting the boundary across the accretion to Lots 2 and 3 of Section 16 by the parties or their predecessors; that the accretion west of said fence was openly, notoriously and continuously, and exclusively occupied by plaintiff appellant or his predecessors in interest for more than twenty years prior to the commencement of this action. The appellant further contends in the event that his first contention cannot be maintained, that any rule of apportionment applying to the facts in this case should have started with shore at the Big Cottonwood Tree as its base line, and equitable apportionment would have substantially followed the line of the fence theretofore maintained on plaintiff's easterly boundary.

Respondents contend that the trial court's finding No. 12 is contrary to the clear preponderance of the evidence, that the court erred in entering such finding, and in refusing to grant respondents' motion to amend the findings substantially to the effect that there is no evidence of the construction or maintenance

of a fence south of the big tree on accretions to Lot 3 by any of plaintiff's predecessors in interest, and that there is no evidence of the use or occupancy of any of the accretions to Lot 3 south, and west of the big tree by any of plaintiff's predecessors in interest prior to the commencement of this action. Respondents further contend that irrespective of whether the trial court erred in entering finding No. 12, or in refusing to amend or modify the same as indicated, that in view of finding No. 13 and the entire record the judgment of the trial court should be affirmed.

■ Finding No. 11 is well supported by the record and sustained by the evidence, and was properly entered by the trial court.

■ ■ Appellant contends the evidence establishes the construction of a fence south of the big cottonwood tree to a point almost to the present location of the river, and that the same was mutually recognized and acquiesced in as the common boundary by the parties and their predecessors in interest, and that therefore a line practically due south of the line dividing Lots 2 and 3 on the original survey to the river became the boundary line across the accretion. It is true that a boundary may be established by agreement or by mutual recognition and acquiescence, 8 Am.Jur., Boundaries, § 72, p. 797; Wood v. Bapp, 41 S.D. 195, 169 N.W. 518. The facts in the Wood v. Bapp case relied upon by appellant sustaining this rule greatly differ from the case here. In the Wood v. Bapp case there was substantial evidence of an oral agreement as to common boundary being made, and likewise a great deal of evidence to the effect that the respective parties and their predecessors for many years had used the land on their respective sides only to this very definite line. In the case now before us there is little if any evidence of anything that could be considered an agreement between any predecessors of the parties in interest, and no agreement between the parties themselves of the boundary across the accretion and the evidence as to a fence south of the cottonwood tree is indefinite and conflicting as to the line of the fence, the length of the fence, the date of construction of the fence, and any recognition of a fence from a definite point to a definite point as a boundary line. In considering the entire record we

are unable to find any credible support for a boundary established by agreement or mutual recognition and acquiescence.

In considering finding No. 12 it is to be noted that the finding does not establish or attempt to establish the exact location of the fence south of the cottonwood tree, the length of the fence or approximately how far the southernmost part of the fence was from the river. There is evidence to sustain the finding insofar as it goes. The findings of the trial court will not be disturbed on appeal unless the evidence clearly preponderates against them, or when supported by credible evidence. Empson v. Reliance Gold Mining Co., 23 S.D. 412, 122 N.W. 346; Centerville Tp. v. Jenter, 25 S.D. 314, 126 N.W. 575; Weidmeier v. Edelman, 75 S.D. 29, 58 N.W.2d 306; Bogue v. Clay County, 75 S.D. 140, 60 N.W.2d 218. The evidence viewed in its entirety does not require nor justify the entry of plaintiff's proposed finding No. 4, and refusal to adopt the same was not error.

The evidence in the case justified the trial court in entering finding No. 13, to the effect that none of the accretion south of the big tree was used or occupied by plaintiff's predecessors in interest continuously for more than twenty years prior to the commencement of this action. In order to establish adverse possession by the pasturing of livestock it is necessary that evidence show at least a reasonably continuous use during the entire statutory period. Anno. 170 A.L.R. 846. The evidence in this case does not clearly establish such use and the trial court did not err in entering finding No. 13. In view of findings 12 and 13 construed together the trial court correctly concluded as a matter of law that plaintiff did not acquire by adverse possession any part of the accretion south of the big cottonwood tree.

We now come to the rule applicable to the apportionment of accretion in the absence of adverse possession. In the case of Todd v. Murdock, 230 Iowa 1121, 300 N.W. 284, the court makes the following statements:

"In apportioning accretion a principal object to be attained is the retention, as nearly as possible, of the former means and right of access to the water. The gen-

eral rule is to give the several riparian owners a frontage on the new shore proportional to their respective frontages on the old one, connecting the respective points by straight lines. 1 R.C.L. 244, 245; Berry v. Hoogendoorn, 133 Iowa 437, 108 N.W. 923; Hathaway v. Milwaukee, 132 Wis. 249, 111 N.W. 570, 112 N.W. 455, 9 L.R.A.,N.S., 778, 122 Am.St.Rep. 975.

"The direction of the original side lines between contiguous riparian tracts has no relation to the direction of the side lines of the respective accretion tracts."

In 56 Am.Jur., Waters, § 494, p. 905 it is stated:

"A rule or mode approved in many cases, unless it results in such inequalities as to make it inequitable, is to give the several riparian proprietors a frontage on the new shore, proportional to their frontage on the old one, connecting the respective points by straight lines. In such case, the lines by which the new frontage is reached will be parallel, or converge or diverge, according as the new water line is equal to and parallel with, or is longer or shorter than, the original shore line."

The rule above quoted is substantially the rule of apportionment approved by us. Karterud v. Karterud, 47 S.D. 58, 195 N.W. 972; Kapp v. Hansen, supra. This is the rule adopted by the trial court in establishing the boundary across the accretion to Lots 2 and 3 of Section 16.

We have carefully considered the other assignments of error and feel that no useful purpose could be served by discussion of the same as the result here arrived at would not be changed.

The judgment is affirmed.

ROBERTS, RENTTO, HANSON and HOMEYER, JJ., concur.

LAMPERT, Circuit Judge, sitting for BIEGELMEIER, P. J., disqualified.