2005 SD 127

**J.K. DEAN, INC., d/b/a Roosevelt Inn, Plaintiff and Appellant,**

v.

**KSD, INC., Rushmore Helicopters, Inc., and Bruce Schiltz, in his individual and corporate capacity, d/b/a Rushmore Helicopter Tours, Defendants and Appellees,**

and

**Town of Keystone, Acting by and Through its Board of Trustees, Defendant.**

Nos. 23534, 23559.

Supreme Court of South Dakota.

Considered on Briefs Oct. 3, 2005.

Decided Dec. 28, 2005.

Marty J. Jackley of Gunderson Palmer Goodsell & Nelson, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Jess M. Pekarski of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, South Dakota, Attorneys for appellees KSD Inc. & Bruce Schiltz/Rushmore Helicopter Tours.

GILBERTSON, Chief Justice.

[¶ 1.]   J.K. Dean, Inc., (Dean), brought an action to abate an alleged nuisance created by KSD, Inc.'s, (KSD), obstruction of a shoulder of Cemetery Road adjoining KSD's property.   Dean commenced the suit against KSD, and then attempted to join the Town of Keystone.   The matter was tried to the court, which found the road was dedicated to the public but only within the paved boundaries of the road. The trial court denied Dean's application for permanent injunctive relief against KSD.   The trial court also dismissed the Town of Keystone from the action after a lack of proper initial service was later corrected, finding that the Town was not a necessary party to the action.   Dean appeals the trial court's denial of his request for injunctive relief.   By notice of review, KSD appeals the trial court's dismissal of the Town of Keystone.   We reverse and remand.

## FACTS AND PROCEDURE

[¶ 2.]   Dean owns and operates a commercial hotel in the Town of Keystone, in Pennington County, South Dakota.   Dean acquired the property in 1996.   KSD owns and operates a commercial helicopter tour business also located in Keystone.   KSD has owned its property since 1961.   Dean's and KSD's properties are separated by Old Cemetery Road, formerly known as Mine Roadway.

[¶ 3.]   The history of Old Cemetery Road dates back to 1883.   Old Cemetery Road is the only means of public access to Keystone Cemetery.   It also serves as a connecting route to Greyhound Gulch Road, and as a connecting route between the southerly end of Keystone and Alternate Highway 16 for both residential and commercial traffic.   It provides the only means of public access for Dean's restaurant and hotel customers.

[¶ 4.]   The road was originally maintained by Pennington County until approximately 1961, and was paved at some point by the County.   The Town of Keystone assumed responsibility for maintaining the road following the Town's incorporation in 1973.   The maintenance by the Town of Keystone was performed primarily on the paved portion of the road to ensure safe travel.   Maintenance included fixing potholes, snow removal, pavement improvements, line painting, bridge repairs, bridge inspections and other routine road maintenance.   The Town also moved speed limit

signs, provided weed and mosquito control spraying, and mowing along the road.

[¶ 5.] Town Board Minutes indicate some shoulder improvements were made to Old Cemetery Road in 1984 when five loads of gravel were delivered and leveling was performed. However, the minutes are silent as to which shoulder areas were affected. There is no indication in the minutes that improvements were made at Town expense to the specific road shoulder of Cemetery Road that adjoins KSD's property.

[¶ 6.] In 1991 the Town, apparently believing the disputed ditch to be owned by KSD, formally requested that KSD dedicate the land in question to public use. KSD's vice president, Bruce Schiltz, declined to sign the dedication document mailed to him by the Town. Instead, Schiltz granted the Town permission to use the edge of the road shoulder to access sewer lines. Schiltz also informed the Town that if it had problems with snow removal, he would not object to the Town placing extra snow on the shoulder if there was a need.

[¶ 7.] A strong rainstorm in 1999 or 2000 washed out part of the road shoulder in question. Schiltz asked the Town to gravel and level the shoulder. Schiltz testified at the hearing that the washout occurred when the bridge to the south of the shoulder would not allow the flow of water to pass through. The runoff came down the east side of the road and onto the shoulder area in question, creating a twelve to eighteen inch drop-off running approximately seventy-five feet along the edge of the roadway. Schiltz asked the Town to gravel and level the area as it presented a danger to the public traveling the road. The Town brought in several loads of gravel and did a minor rebuild of the area. The Town informed KSD that any additional work would be the responsi-

bility of KSD. KSD performed additional work to finish the repairs to the road shoulder adjoining its property.

[¶ 8.] Sometime between 2001 and 2003, KSD erected signs, staking and ropes on the shoulder of Old Cemetery Road that adjoins its property. The signs indicated that parking along the shoulder was for helicopter tour customers only. Apparently previous to this, Dean's hotel customers had used this ditch area to park their cars. KSD also asked the Pennington County Sheriff to ask hotel customers to remove their vehicles from the posted area. Dean objected to the limitations imposed by KSD upon the shoulder that precluded his customers from parking in the disputed ditch area, and brought suit for a permanent injunction barring KSD from cordoning off the area and preventing all but helicopter tour customers from utilizing the area for parking. Dean's complaint alleged Cemetery Road was dedicated to the public, and that the dedication included the shoulder area in question.

[¶ 9.] Dean commenced the action against KSD by summons and complaint on July 7, 2004, but neglected to join the Town. Dean attempted to bring in the Town, but failed to make proper service when the original summons and complaint were delivered to the Town's attorney. Despite the failure, the Town's attorney attended a deposition taken August 12, 2004, and the trial on August 13, 2004, but did not enter an appearance. The trial court announced its decision on August 23, 2004, and proposed findings of fact and conclusions of law were forwarded to all three parties. The Town entered objections to proposed findings of fact and conclusions of law on September 7, 2004, raising for the first time an objection that the Town had not been served with process and demanded the Town be stricken as a

named Defendant. Thereafter, Dean obtained proper service on the president of the Keystone Board of Trustees on October 13, 2004.

[¶ 10.] On November 10, 2004, at the motion hearing on the matter, the trial court found that the Town was never personally served with the summons and was not subject to the jurisdiction of the trial court. The trial court dismissed the Town in its judgment dated December 11, 2004, finding that it was not a necessary party to the action. In its findings of fact and conclusions of law, the trial court specifically found that Cemetery Road had been dedicated to the public prior to 1985, but that the dedication included only those portions of the roadway that had been paved by Pennington County and maintained by the Town of Keystone.

[¶ 11.] Dean appeals one issue:

Whether the trial court erred when it found Dean possessed no legal basis upon which his hotel customers could park their vehicles in the disputed road shoulder area.

[¶ 12.] By notice of review, KSD appeals one issue:

Whether the trial court erred when it dismissed the Town of Keystone.

[¶ 13.] KSD's issue concerning the dismissal of the Town must be addressed first, as it pertains to the Town's role as an indispensable party to the underlying litigation.

## STANDARD OF REVIEW

[¶ 14.] The determination of whether a party is indispensable is a conclusion of law and is reviewed by this Court *de novo. Titus v. Chapman,* 2004 SD 106, ¶ 15, 687 N.W.2d 918, 923 (citing *Thieman v. Bohman,* 2002 SD 52, ¶ 14, 645 N.W.2d 260, 262). "As such, a trial judge has no discretion whether to join an indispensable party, as the language of SDCL 15-6-19(a) is mandatory." *Id.* (citing *Smith v. Albrecht,* 361 N.W.2d 626, 628 (S.D.1998) (citing *Kapp v. Hansen,* 79 S.D. 279, 286, 111 N.W.2d 333, 337 (1961))).

## ANALYSIS AND DECISION

[¶ 15.] **Whether the trial court erred when it dismissed the Town of Keystone.**

[¶ 16.] KSD contends that it was error for the trial court to dismiss the Town of Keystone as it was a necessary party to the litigation. KSD further argues that because Dean was subsequently able to obtain proper service of process, the lack of initial proper services was timely cured.

[¶ 17.] As this Court has previously noted,

There are three classes of parties to an action by equity: "Formal parties," who may be omitted at the option of the complainant; "necessary parties," who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that the court can, without injustice, proceed in their absence; and "indispensable parties," whose interest is such that a final decree cannot be entered without affecting them, or that termination of controversy in their absence would be inconsistent with equity.

*Kapp,* 79 S.D. at 284, 111 N.W.2d at 336 (quoting *Weitzel v. Felker,* 76 S.D. 216, 218, 76 N.W.2d 225, 226 (1956)). The inclusion of a necessary party is within the trial court's discretion. *Thieman,* 2002 SD 52, ¶ 13, 645 N.W.2d at 262–63 (quoting *Smith,* 361 N.W.2d at 628 (citing *Kapp,* 79 S.D. 279, 111 N.W.2d 333)). However, there is no discretion as to the inclusion of an indispensable party. *Id.*

[¶ 18.] When an action is brought seeking or having the effect of

declaring a road as dedicated to the public, the public entity that will be forced to maintain the dedicated road is an indispensable party to the action. *Smith*, 361 N.W.2d at 628 (citing *Henle v. Bodin*, 54 S.D. 46, 222 N.W. 492 (1928)). A municipality may not waive its indispensable role as the representative of its taxpayers, although it is possible for a municipality to waive its role as an indispensable party when it purports to act in its own interest. *Id.*

[¶ 19.] In the instant case, Dean sought a permanent injunction barring KSD from creating a nuisance by placing signs, stakes and ropes on the shoulder of the road adjoining KSD's property. In its complaint, Dean claimed the shoulder area had previously been dedicated to the public as part of Cemetery Road, and therefore KSD had no legal right to keep the general public from freely accessing the land in question. In his prayer for relief, Dean sought a permanent injunction barring KSD from using the shoulder area in a manner that benefited KSD's business interests and harmed Dean's.

[¶ 20.] Despite the fact that Dean did not seek to have the shoulder area dedicated to the public, the effect of Dean's complaint and requested relief would have been such a dedication. The resulting dedication would have obligated the Town to maintain the shoulder area at taxpayer expense. Although Dean did not prevail on its claim that the shoulder area had been dedicated to the public, the trial court's holding declared that Cemetery Road was dedicated to the public at some point in the past. As a consequence, the trial court's holding obligates the Town to maintain Cemetery Road, except for the shoulder area that the trial court found had not been dedicated to the public by KSD.

[¶ 21.] However, the Town was not a party to the litigation as the trial court had dismissed it in its judgment and order, after finding the Town was not a necessary party. Under our holding in *Thieman*, the Town of Keystone was an indispensable party to the action, as the trial court's holding subjects it to an obligation for the upkeep of Cemetery Road. The trial court erred when it dismissed the Town of Keystone from the action, as it was an indispensable party to the litigation.

[¶ 22.] Because the trial court erred when it dismissed the Town, we do not reach Issue 2. We reverse and remand and require the Town be joined as an indispensable party.

[¶ 23.] SABERS and MEIERHENRY, Justices, concur.

[¶ 24.] KONENKAMP and ZINTER, Justices, concur specially.

ZINTER, Justice (concurring specially).

[¶ 25.] I concur that under established jurisprudence, the Town of Keystone was an indispensable party, and therefore, this case must be reversed. However, on retrial, the trial court should reconsider and reconcile an inconsistency in the record (and in its decision) concerning the width of the public road.

[¶ 26.] The parties do not dispute that this road has been impliedly dedicated and accepted as a public roadway since 1883. Moreover, there is no dispute that it is not a simple dirt path or trail with no supporting shoulders or ditches. Rather, Pennington County and the Town improved and paved a modern road. Moreover, they maintained it throughout its lengthy history. The question is whether the improvements and maintenance, the public's use, and the nature of the road itself are sufficient to constitute an implied dedication

and acceptance of the shoulders[1] and ditches.

[¶ 27.] The trial court ultimately concluded that the shoulders and ditches were not impliedly dedicated and accepted, and therefore, only the pavement was public. However, inconsistently, the trial court acknowledged in a handwritten finding that maintenance over these many years "was done to the shoulder by the city [Town] and county, incidental to the road usage." This finding of incidental maintenance, and the record evidence supporting it, suggests that the shoulders and ditches were dedicated and accepted by the public along with the pavement.

[¶ 28.] The finding of incidental maintenance, the undisputed evidence of public improvements, and the nature of the roadway suggest a dedication and acceptance because "[g]enerally, no particular formality is essential to an implied dedication or acceptance of land for a public use." *Smith v. Sponheim*, 399 N.W.2d 899, 901 (S.D.1987) (citation omitted). Rather, "[c]onduct on the part of the owner that is clearly expressive of an intention to dedicate usually amounts to dedication, if acted upon by the public in a manner which clearly justifies the inference of an acceptance." *Township of Centerville v. Jenter*, 25 S.D. 314, 317, 126 N.W. 575, 576 (1910) (quoting *Larson v. Chicago, M. & St. P. Ry. Co.*, 19 S.D. 284, 289–90, 103 N.W. 35, 37 (1905)); *Roche Realty & Inv. Co. v. Highlands Co.*, 29 S.D. 169, 177, 135 N.W. 684, 685 (1912) (citations omitted). Therefore, a public entity's similar improvements have been found to be sufficient to constitute an implied dedication and acceptance. *Sponheim*, 399 N.W.2d at 903 (grading, graveling, and installation of cul-

verts and a drainage ditch). Maintenance by a public entity may also constitute acceptance. *Id.* at 903–04 (maintaining, repairing, and removing snow). And, the maintenance need not be regular. *Id.* at 904–05 (stating that "evidence of the County's treatment of the road as a public highway is demonstrated by its continual maintenance of the road, even though such maintenance was not always done on a regular basis"). Moreover, KSD, Inc.'s private maintenance does not necessarily destroy the public dedication and acceptance. This Court has recognized that landowners and governmental entities may, to some extent, jointly maintain an impliedly dedicated and accepted roadway. *Id.* at 903–05. Finally, and apart from the County and Town's improvement and maintenance, the trial court must consider the nature of the public's use.

[D]edication may be accepted merely by long-continued public use[ ], without any formal act of acceptance, even to the extent of charging the public authorities with liability for failure to keep in repair. This is declared by some courts to be the very highest kind of evidence of acceptance.... There is no established standard by which the use necessary to determine an acceptance by the public may be measured and declared to be sufficient, but the authorities are in agreement to the effect that a use which would naturally follow from the character of the place and the settlement of the community is sufficient.

*Miller v. Southard*, 38 S.D. 477, 487, 162 N.W. 146, 149 (1917) (citation omitted).

[¶ 29.] In applying these principles it must be reiterated that this is not a simple dirt path or trail: it is a modern road that

---

1. It is only the shoulder adjacent to KSD Inc.'s property that started this dispute. However, other than one specific Town repair caused by flooding, we have not been directed to evidence reflecting that this portion of the road's shoulder was created or maintained differently than the rest of the shoulders or ditches.

was graded, improved, and paved. Obviously, a paved road of this character in this location may not exist without supporting shoulders and ditches. The photographs and maps confirm that these ditches and shoulders are naturally and, in fact, necessarily required to physically support the pavement. It is also common knowledge that ditches and shoulders would have been created in the process necessary to construct the grade upon which the pavement has been placed. These matters should be considered on retrial because this Court has long noted "the situation of the land over which a way is claimed should exert an important influence upon the question of dedication." *Roche Realty*, 29 S.D. at 177, 135 N.W. at 686 (noting in that dispute, the same acts that would warrant the inference of dedication in cities and towns could be insufficient in agricultural areas) (citing 1 Elliott, *Roads and Streets* § 182 (3d ed.1911)). Consequently, if the shoulders and ditches are necessary to support the pavement, they must be a part of the implied dedication and acceptance.

[¶ 30.] An implied dedication and acceptance is also supported by other record evidence reflecting that the ditches and shoulders are necessary to accommodate the public's use; *i.e.*, road maintenance, drainage, snow removal, and traffic control signage. An implied dedication and acceptance is finally supported by the fact that the Town[2] has maintained the shoulders and ditches at various times, including: 1) road shoulder improvements, such as graveling and leveling; 2) a partial

road shoulder repair following a flood; 3) weed clearing and mosquito control on Grizzly Bear Creek; 4) construction of road ditch drainage; 5) posting of signs, including speed limit signs; 6) plowing the snow and use of the shoulder and ditches for snow removal; and 7) cleaning of drainage culverts.

[¶ 31.] On retrial, the trial court should consider the Town *and* the County's maintenance of the shoulders and ditches together with the nature of this improved road and the character of the public's use. Considering these facts, it appears likely that the shoulders and ditches are necessarily a part of the road. If they are a necessary part of the road, the undisputed public dedication and acceptance would not be limited to the pavement.

[¶ 32.] KONENKAMP, Justice, joins this special writing.

---

2. Although there is a suggestion in the briefs that some of the Town's acts of maintenance are not relevant because they occurred within the twenty-year prescriptive period, the suggestion is misplaced. "[P]roof of use[ ]for a period much shorter than that required to show title by prescription may be sufficient to prove [the more limited question of] intent and dedication." *Mason v. City of Sioux Falls*, 2 S.D. 640, 648, 51 N.W. 770, 773 (1892). Moreover, there is no dispute that before the Town began maintenance, the County was performing that duty. Consequently, there has been public maintenance of this roadway since its inception.